## Oliver (et al., Appellant) *v.* Clairton.

Argued May 29, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

Appeal, No. 134,

*John B. Nicklas, Jr.,* with him *James P. Gill,* for appellant.

*John A. Metz, Jr.,* with him *Metz & Metz* and *Stokes & Lurie,* for appellees.

*Howard E. Stern,* with him *Milton C. Sharp,* for Redevelopment Authority of Philadelphia, amicus curiae.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, June 26, 1953:

The original plaintiff, Matthew P. Oliver, is the owner of two lots of ground in the City of Clairton. The Planning Commission of that city certified as "blighted" a certain area which included his land; it transmitted this information to the Redevelopment Authority and to the City Council. The Authority prepared a redevelopment proposal and executed a redevelopment contract with the Pennsylvania Industrial Chemical Corporation as Redeveloper; the Planning Commission having approved the proposal, the Authority submitted it to the City Council together with the proposed redevelopment contract. The City Council, pursuant to advertised notice, held a public hearing and subsequently adopted resolutions approving the proposal, the redevelopment contract and a lease agreement which was referred to therein. Oliver, who had vigorously opposed the entire project, filed a bill of complaint against the City, the Councilmen, the Authority and the Redeveloper, asserting that the Planning Commission, in certifying the area as blighted, had acted arbitrarily and in

bad faith and had not complied with the requirements
of the Urban Redevelopment Law, and that the rede-
velopment contract did not comply with the provisions
of the act. The bill prayed that all the proceedings
should be adjudged null and void and that defendants
should be enjoined from taking any steps to acquire
plaintiff's land by the exercise of the power of eminent
domain. Answers having been filed, the court held a
hearing, as a result of which it dismissed the bill. Oliver,
the plaintiff, has not appealed from that decree, but
one Herman H. Recht, alleging that he was the owner
of a one-sixth undivided interest in several lots, on
some of which buildings were erected, petitioned, when
the hearing began before the court below, to be allowed
to intervene. This permission was granted and it is he
who now appeals from the court's decree.

It may be said at the outset that none of the accusa-
tions of bad faith and fraud made against defendants
finds any support whatever in the testimony. There is
not a scintilla of evidence sufficient to create even sus-
picions, much less proofs, that would justify such an
attack. It was not shown that any of the members of
the Planning Commission, the Authority or the City
Council, had any selfish or personal interest whatever
in the redevelopment project. Its underlying purpose
was to induce the Redeveloper to remain in the City of
Clairton and expand its facilities there, and to make
the redeveloped land an industrial area which would
add to the resources and prosperity of the city. There
is nothing to indicate that the Planning Commission,
the Authority or the City Council, acted arbitrarily,
capriciously, secretively, or with undue haste; on the
contrary there was reasonable deliberation on the part
of all these bodies throughout, the project being con-
summated only after the proceedings had consumed a
period of almost a year. Ample notice was given to the

public and full opportunity afforded to both the plaintiff and the intervening plaintiff to present and discuss their objections, an opportunity of which they fully availed themselves, being represented at all stages by able counsel. The chancellor found as a fact that the members of the Planning Commission had personally examined the area, had received and considered numerous documents and reports pertaining to the land, and had even hired an independent planning organization to investigate the area and render a report on its condition. In transmitting its own findings to the Authority and the City Council they recited nine important benefits that would accrue from the redevelopment of the area and which influenced their decision to certify it as blighted and to approve the redevelopment proposal. In short, we agree with the finding of the court below that "In this case there is absolutely no showing of fraud or bad faith on the part of the Planning Commission." And the same may be said with equal justification as to both the Authority and the City Council.

Coming now to the appellant's complaints that there were irregularities in the redevelopment proceedings, we regard them, as did the court below, as wholly captious and without any substantial merit. The Urban Redevelopment Law (Act of May 24, 1945, P. L. 991) provides, section 10, that the Authority shall prepare a redevelopment proposal for any area certified by the Planning Commission, and for which the latter has made a redevelopment area plan, which plan shall include certain prescribed data. Appellant finds fault with the fact that in the present case the initiative was apparently taken by the Authority itself, for it prepared and adopted a redevelopment proposal and submitted it to the Planning Commission for review before the latter body had certified the area as blighted. However, the Planning Commission, having carefully studied the en-

tire project, did thereupon certify the area as blighted and at the same meeting examined and approved the redevelopment proposal. The order in which these transactions occurred is obviously of no real importance; the certification required by the law being made by the Planning Commission after full consideration, and the redevelopment proposal being adopted by the Authority and approved by the Planning Commission, this was all that the law substantially required.

Appellant complains that the Planning Commission failed to prepare the redevelopment area plan containing all of the information specified in the statute. Since, however, it did approve the redevelopment proposal, and since that proposal complied strictly with the requirements of the act in regard to a redevelopment area plan, this technical variation did not constitute an irregularity worthy of serious consideration.

Appellant next criticizes the action of the Authority in having executed a contract with the Redeveloper before City Council had approved it, but this loses sight of the fact that the contract itself provided that it was to be binding upon the parties when approved by the Council. The Authority submitted to the City Council the proposal and the contract, together with photographs, maps of the area, land use maps, land use map after redevelopment, extract from the Planning Commission meeting certifying the area as blighted and approving the proposal, and certain other data. The City Council's approval of the contract gave the right to the Authority to execute it. Moreover, it is an elementary principle of law that ratification is equivalent to prior authority.

Appellant denounces the redevelopment contract as "an unfair inequitable and unreasonable" agreement. We find no justification for any such condemnation; in it the Redeveloper agreed to abide by all provisions of

the redevelopment contract set forth in the Urban Redevelopment Law. Furthermore, it was stated in *Schenck v. Pittsburgh*, 364 Pa. 31, 38, 70 A. 2d 612, 615, that "It is for the Authority and the Redeveloper . . . to decide upon the terms of their contract and for the City Council to approve or reject it, and, if it contains the provisions stipulated in the Urban Redevelopment Law . . . it is not for the courts to pass upon the merits of suggestions as to how the contract might be strengthened by amendments the desirability and effectiveness of which are for the consideration solely of the agencies and governing body to which the Urban Redevelopment Law has committed that responsibility."

The statute requires, section 10(g), that the redevelopment proposal with such maps, plans, contracts or other documents as form part of it, shall be available for public inspection for at least ten days prior to the public hearing held by City Council. Appellant contends that the lease agreement between the Authority and the Redeveloper was not available for public inspection during that time. However, the contract itself was on file for public inspection for the required period, and the terms of the lease were discussed at the public hearing; moreover, although not before the Council when the redevelopment proposal was approved, the lease was submitted to it within a month thereafter and it was then approved by resolution of that body. A lease to the Redeveloper made in furtherance of the contract need merely contain such provisions as the Authority may deem desirable to run with the land in order to effectuate the purposes of the act. The present lease conformed to all the requirements of the law.

The Urban Redevelopment Law specifies, section 2(a), the conditions which cause areas to become "blighted" within the meaning of the act, namely, an un-

safe, unsanitary, inadequate or over-crowded condition of the dwellings, or inadequate planning of the area, or excessive land coverage by the buildings, or the lack of proper light, air and open space, or the defective design and arrangement of the buildings, or faulty street or lot layout, or economically or socially undesirable land uses. Appellant seeks to establish that all of these conditions did not exist in respect to the present redevelopment area, but this contention overlooks the fact that for the Planning Commission to certify an area as blighted it is not necessary that each and every one of the conditions thus specified in the statute should exist, but that any one of them is sufficient to warrant such certification and the adoption of a redevelopment project. In the present case the Planning Commission certified that there were several conditions which constituted a blight on the area,—for example, that over 50% of the dwelling units were sub-standard or "slum" quality grade, that there were not lots of adequate width and area to accommodate a minimum manufacturing plant for which use the area was zoned, that an inspection of the area and an examination of the land use map showed that industry, commerce and residences were closely mixed and intermingled to the great detriment of all, and that there was no doubt but that the area was socially and economically undesirable. Wholly apart from such findings, we said in *Schenck v. Pittsburgh,* 364 Pa. 31, pp. 35, 36, 70 A. 2d 612, 614, that "in the absence of any indication that the Commission did not act in good faith or was wholly arbitrary in certifying the area designated by it as blighted, its certification to that effect is not subject to judicial review," and that, since the Urban Redevelopment Law "gives the power of eminent domain to the Urban Redevelopment Authority, it is for that agency, and not for the courts, to determine whether or not the power should be exercised

in this particular instance. It has been held in many cases that where the right of eminent domain is vested in a municipality, an administrative body, or even a private corporation, the question as to whether the circumstances justify the exercise of the power in a given instance is not a judicial one, at least in the absence of fraud or palpable bad faith." Incidentally it may be noted that the Chancellor found that the 5 acres constituting this redevelopment area had long been zoned as "heavy industrial," that the ground consisted of 58 residential lots which, however, were not actually laid out with open streets, that there were 7 small buildings in the area, that over 90% of the land was vacant and unimproved, that the assessed valuations in the decade from 1940 to 1950 revealed 9 decreases and not a single increase, that 15 of the lots have unpaid city and school taxes going back as far as 1930, and that the ownership of the lots was divided among approximately 22 individuals and there were 15 individual or multiple owner units holding the various titles.

Appellant urges that the lots in which he is interested ought not to be taken because, being farthest distant from the proposed building of the Redeveloper, they will not be required for that purpose. The court below pointed out, however, that although the present plans did not contemplate their immediate use, the 5 acre plot constituting the redevelopment area formed a single large tract bounded on three sides by major streets and on the remaining side by a railroad, and that this, alone, would justify the taking of the whole area; furthermore, nothing in the statute required that the Redeveloper must make instant use of all the land taken, and to exclude patches of ground here and there would violate one of the purposes of the act, which is to assemble parcels of land into a unified whole and thereby to make the area available for redevelopment purposes.

There is no merit in appellant's final contention that a large part of the area involved consists of vacant land. The Urban Redevelopment Law does not limit the certification of blighted areas to improved property; on the contrary, section 3 (n) defines the term "Redevelopment Area" as "Any area, *whether improved or unimproved,* which a planning commission may find to be blighted because of the existence of the conditions enumerated in section two of this act so as to require redevelopment under the provisions of this act." And section 3 (m) defines the term "Redevelopment" as the acquisition, replanning, etc. of an area, "including the provision of streets, parks, recreational areas *and other open spaces.*"

It may be well to point out once more what was said in the *Schenck* case (p. 37, A. p. 615) that the Urban Redevelopment Law is to be sharply distinguished from the Housing Authorities Law of May 28, 1937, P. L. 955, in that the latter aimed principally at the elimination of undesirable dwelling houses, whereas the Urban Redevelopment Law "was obviously intended to give wide scope to municipalities in redesigning and rebuilding such areas within their limits as . . . no longer meet the economic and social needs of modern city life and progress." Redevelopment authorities have the power, therefore, where the conditions prescribed in the act are found to exist, to exercise the right of eminent domain pursuant to a redevelopment proposal even though the redevelopment area may be predominately open, vacant or unimproved.

The decree is affirmed at the cost of appellant.