St. Peter's Roman Catholic Parish, Appellant, *v.* Urban Redevelopment Authority of Pittsburgh.

Argued November 19, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

 reargument refused December 30, 1958.

*Louis C. Glasso,* for appellant.

*Theodore L. Hazlett, Jr.,* for Urban Redevelopment Authority of Pittsburgh, appellee.

*J. Frank McKenna, Jr.,* City Solicitor, with him *Mead J. Mulvihill, Jr.* and *David Stahl,* Assistant City Solicitors, for City of Pittsburgh, appellee.

*Joseph R. Doherty,* with him *McCloskey, Best & Leslie,* for Most Reverend John F. Dearden, Bishop of the Diocese of Pittsburgh, appellee.

OPINION BY MR. JUSTICE BOK, December 4, 1958:

We are asked to pass upon preliminary objections, sustained by the court below, to a complaint in equity. The suit was brought by the parishioners, patrons, and members of St. Peter's Roman Catholic Church in Pittsburgh, as plaintiff, against the Urban Redevelopment Authority of Pittsburgh, the City of Pittsburgh, and the Bishop of the Diocese of Pittsburgh.

The complaint refers to various documents in order to establish the plaintiff's claim but contains only one of them as an exhibit. The preliminary objections attach the others. Ordinarily the court may not, on demurrer, consider matters beyond the pleading opposed, but under the circumstances above mentioned the instruments may be referred to: *Detweiler v. Hatfield Borough School District,* 376 Pa. 555 (1954).

From these documents and the complaint, twice amended, the following facts appear:

In 1950 and 1951 an area of over ninety acres in the center of Pittsburgh was certified by the City Planning Commission to the Authority for redevelopment as a blighted area. The Authority submitted the proposal, with plan, to the Council of the City, which fixed July 6, 1955, as the time for a public hearing. This having been held, Council approved the project by ordinance. Plaintiff's church is located in the area, and so is another known as Epiphany Church.

The Authority took proper corporate action on October 2, 1957, to condemn plaintiff's land. Believing that execution of the redevelopment plan would require the razing of both churches, the members of the

plaintiff parish did not attend the public hearing, alleging that they did not wish to interfere with progress. The Authority then exempted Epiphany Church from the project and entered into a bond and later an agreement with the bishop, dated February 25 and 27, 1958. By this agreement the bishop accepted as damages the sum of $1,240,000 in compromise settlement of the taking and destruction of St. Peter's Church. The bond and agreement were neither reported to the plaintiff parish by the bishop nor approved by it. This suit followed.

The complaint charges abuse of the Authority's discretion, discrimination, and capricious and arbitrary action. The reasons given have to do with the nature and purpose of the improvements contemplated by the plan of redevelopment.

The preliminary objections are: (1) that the complaint does not state a cause of action; (2) that the plaintiff lacked capacity to sue; (3) that the court below lacked jurisdiction; and (4) that the plaintiff was barred by laches. Jurisdiction was upheld by the court below and was not argued before us.

It need be noted only in passing that the purpose of the Authority is to deal with an area rather than with individual properties: *Oliver v. Clairton,* 374 Pa. 333 (1953). And it is generally settled that unless bad faith, arbitrary action, or failure to follow a statutory requirement are shown, the certification by an Authority that an area is blighted and the plan for improving it are not subject to judicial review: *Schenck v. Pittsburgh,* 364 Pa. 31 (1950); *Oliver v. Clairton,* supra, 374 Pa. 333 (1953); *Lazrow v. Philadelphia Housing Authority,* 375 Pa. 586 (1954); *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566 (1954). Plaintiff's criticisms of the Authority's action fall within this rule.

The dispositive rule is that plaintiff, as a parish or congregation, has no standing to sue. The bishop owns the property, in trust for the parish, and alone may dispose of it in accordance with the canons of the Roman Catholic Church.

His ownership as trustee is settled by the Act of June 20, 1935, P. L. 353; 10 P.S. §81, which reads, in part: "Whensoever any property . . . has . . . been . . . conveyed to any . . . bishop . . . for the use of any church, congregation, or religious society, for or in trust for religious worship . . . the same shall be taken and held subject to the control and disposition of such officers or authorities . . . having a controlling power according to the rules, regulations, usages, or corporate requirement of such church . . ., which control and disposition shall be exercised in accordance with . . . the rules and regulations, usages, canons, discipline and requirements of the religious body . . . to which such church, congregation, or religious society shall belong . . . ."

The cases of *Canovaro v. Brothers of the Order of Hermits of St. Augustine,* 326 Pa. 76 (1937), and *Post v. Dougherty,* 326 Pa. 97 (1937), hold clearly that a member of a parish has no property right in his membership or any property right in church property save as a member; that his rights are governed by the laws of his denomination; and that the Roman Catholic canons and the decisions of the appropriate tribunals and officials of the Church control the issues raised in the case, unless those canons and decisions should contravene the law of the land. Both cases involved extinction of a parish by proceedings in accordance with church regulations. If a parish can be extinguished, a church building can be razed.

The members of the plaintiff parish are bound by the Act of 1935 and by these cases. They have not al-

leged that the action of the defendant bishop contravenes the canons of the Church or the law of the land. The power to dispose of this church property is therefore exclusively in him. Nor has plaintiff in any way impugned the action of the bishop as being against the prescribed process of the Church or as being in bad faith, but rather in its answer to the preliminary objections has expressly excepted him from any imputation of fraud. Hence plaintiff may not have the advantage of the familiar rule that the beneficiaries of a recalcitrant or evil trustee may step into his place and sue.

For the same reason complaints about the conduct of the Authority are irrelevant and it is unnecessary to discuss the question of laches.

The order of the court below, sustaining preliminary objections (1) and (2) and dismissing the complaint, is affirmed.

---

CONCURRING OPINION BY MR. JUSTICE BELL:

I heartily concur with that part of Justice MUS-MANNO'S opinion which expresses so beautifully and spiritually our feelings about the Church of God. However, I would go further.

I shall assume that the action of the City Planning Commission in certifying, and of the Council of the City of Pittsburgh in ordaining that an area of over 90 acres in the center of Pittsburgh was a "blighted area", was justified. However, the action of the Redevelopment Authority (1) in condemning and ordering the destruction and demolition of beautiful St. Peter's Church was, in my opinion, outrageous and (2) when considered in connection with their further action in exempting from destruction the Epiphany Church, which was within the blighted area and less than two blocks away from St. Peter's Church, was

arbitrary, discriminatory and unjustifiable. In my judgment the action of the Redevelopment Authority was, for each of the foregoing reasons, a manifest abuse of discretion and consequently was reversible: *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A. 2d 331.

However, the act of the Bishop of the Diocese of Pittsburgh in accepting the Authority's offer of damages in the sum of $1,240,000 for the taking of St. Peter's Church apparently bars plaintiffs' remedy.

It is well settled that ecclesiastical matters are governed by church law and not by civil law except where property rights are involved. In *Canovaro v. Brothers of The Order of Hermits of St. Augustine,* 326 Pa. 76, 191 A. 140, the Court said (pages 88, 81, 84) : "The Act of 1935 recognizes the binding effect of the internal laws of religious societies regarding the power of control and disposition of church property . . . Under the canons of the church there can be no such thing as a separate and independent church organization within the Roman Catholic Church, whereby property may be acquired and held in opposition to its laws, canons, rules and regulations, and at the same time be subject to its supervision and control . . . Property control, as well as all other ecclesiastical matters, is now governed by church law, . . .

"The canons empower the Ordinaries to divide or dismember parishes when canonical reasons exist, notwithstanding the unwillingness [and opposition] of the rectors and members . . . Division, dismemberment or suppression of parishes, and the effect thereof on membership are purely ecclesiastical matters, dependent upon the church law as administered by the appropriate authorities and tribunals."

This case arose and was decided on preliminary objections. In *Gardner v. Allegheny County,* 382 Pa. 88,

114 A. 2d 491, this Court said (page 94) : "Defendants by their 'preliminary objections admit as true all facts which are averred in the bill of complaint but not the pleaders' conclusions or averments of law': Narehood v. Pearson, 374 Pa. 299, 302, 96 A. 2d 895. Moreover, when the sustaining of defendants' preliminary objections will result in a denial of plaintiffs' claim, or a dismissal of plaintiffs' suit, preliminary objections should be sustained only in cases which are clear and free from doubt: London v. Kingsley, 368 Pa. 109, 81 A. 2d 870; Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776."

It is very difficult to determine from the record* exactly what the bishop's authority is. The complaint merely averred "that the funds for the purchase of the lands and the erection of the church and appurtenant buildings of said parish were furnished exclusively by the parishioners and not by any contributions from the funds of the Diocese of Pittsburgh"; and further averred "that title to the lands, buildings and appurtenances of the aforesaid St. Peter's Parish . . . is now held by the Bishop of the Diocese of Pittsburgh . . . a defendant herein as Trustee for the plaintiff parish and congregation".

Unfortunately, the complaint did not go further and aver that the bishop had no authority under the canons of the Roman Catholic Church to control or dismember or sell this church or to permit its destruction, even though such action was opposed by all the parishioners. Moreover, it does not appear whether the bishop would have accepted the Redevelopment Authority's offer of damages in the sum of $1,240,000 for

---

* In *Canovaro v. Brothers of The Order of Hermits of St. Augustine*, 326 Pa. 76, and in *Post v. Dougherty*, 326 Pa. 97, the authority of a Bishop and of the Holy See were proved by testimony.

the taking of St. Peter's Church, if he had realized that the Authority's action was in this respect unjustifiable and void. However, since there is no allegation by plaintiffs that the bishop did not have the authority he exercised, nor any averment of the canons of the Roman Catholic Church, or that the canons had changed since the decision of this Court in *Canovaro v. Brothers of The Order of Hermits of St. Augustine,* supra, I must, in the absence of a curative amendment to plaintiffs' complaint, concur in the dismissal of this appeal.

---

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

I concur in the decision of the Court but in doing so I cannot refrain from expressing a deep melancholy in the passing of St. Peter's Church on Fernando Street of Pittsburgh. For a half century it has offered religious comfort, spiritual solace, and soulful contemplation to its parishioners and all those who have stepped within its cathedral-like vastness. The destruction of an ecclesiastical building is necessarily an event of sadness because it is, after all, a house of God.

Nothing can be more sacred to a devout person than his church. It is an implementation of, and almost a synonym with, parental attachment; it is more than a house of prayer, it is a ship on which he books passage for the eternal voyage which will reunite him with all the beloved ones who have gone before. When he has practically been born into a church, when he has striven with full heart to maintain it over years and decades, when he glories in its immaculate beauty and accepts it as his guardian angel, it is an almost unbearable shock to him to contemplate that it might cease to exist.

During the war I saw many churches in the No Man's Land of battle being shelled by artillery, blasted by grenades and razed by bombs dropped from airplanes. One of the supreme joys I experienced in the ending of the war was the realization that churches would no longer be crushed between conflicting engines of destruction. And this memory accentuates all the more my feeling of sadness in the passing of the church on Fernando Street—in a day of peace.

St. Peter's Church is an ecclesiastical monument of rare and priceless beauty. Architecturally and artistically, it is breath-taking in its ampleness, sweep, harmony of lines and classical symmetry. It stands in the very midst of the metropolis of Pittsburgh, a blessed sanctuary of marble and precious stone, flanked by a grotto of heart-warming radiance—a Lourdes Memorial Shrine—to which through the years tens of thousands have made holy pilgrimage.

St. Peter's Church, as a structure, will be razed because of a redevelopment plan which envisages the clearing of 90 acres in the so-called Lower Hill Area of Pittsburgh. The Most Reverend John F. Deardon, Bishop of the Diocese of Pittsburgh, who holds title to the lands, buildings, and appurtenances of St. Peter's Church in trust for the congregation, cannot but regard with heavy heart the disappearance of this magnificent and holy house of worship, but it is not within his temporal power to stay the act of an agency of government. The Constitution provides for a complete separation between church and state.

The clearing of the 90-acre tract is the result of action taken under the provisions of the Urban Redevelopment Law of May 24, 1945, P. L. 991, as amended (35 P.S. §1701, et seq.). The clearing is part of the vast program of renaissance and rebuilding in Pittsburgh. This program, insofar as it pertains to the

Hill Area, has now reached an advanced stage of fulfillment. Any stoppage or major alteration in it would cause confusion and chaos as well as visit irreparable damage on others whose rights have since intervened. Judge BROWN of the Court of Common Pleas of Allegheny County well described the situation in his opinion refusing preliminary injunction: "The Urban Redevelopment Authority has entered into a loan and grant agreement with the Federal Government; has issued its notes for land acquisition and other costs; and has acquired hundreds of properties in the Lower Hill Redevelopment Area. As this is one of the largest projects of redevelopment ever undertaken in our City, as well as perhaps in the entire Commonwealth, and in view of the fact that the work is going on within a five-minute walk of this court house, we take judicial notice of the tremendous undertaking involved in this redevelopment project, which comprises over 90 acres in a formerly densely populated district."

Nevertheless, I sympathize with the parishioners and can appreciate their agony of spirit in the loss of a church to which they are attached and devoted through years of attendance, sacrifice and memories of the most sacred events in the lives of their respective families. But, as pointed out in Justice BOK's opinion, the law applicable to the case is explicit and, as it now stands, can offer no alternative in the disposition of the legal issue involved.

However, speaking for myself, I am confident that the loyalty manifested by the parishioners toward their Church can not go unnoticed and unrequited, and that in the broad expanse of their fealty and devotion, a church will rise to receive the expression of their faith and their love.