Mr. Justice COHEN dissents.

## St. Peter's Roman Catholic Parish *v.* Urban Redevelopment Authority of Pittsburgh, Appellant.

Submitted June 30, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Theodore L. Hazlett, Jr.,* for Urban Redevelopment Authority of Pittsburgh, appellant.

184

*David Stahl,* City Solicitor, with him *Mead J. Mulvihill, Jr.,* Assistant City Solicitor, for City of Pittsburgh, appellant.

*Louis C. Glasso,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, July 8, 1960:

The granting of an injunction on the complaint in this case was egregious error. It may not even be extenuated as a palpable abuse of discretion. The record afforded no opportunity for an exercise of discretion. The court below should have perceived at once that the complaint was concerned with the same parties, the same subject matter and the same issues as were involved in the former proceeding which was terminated by our final order of December 4, 1958, affirming the order of the court below which had sustained the defendants' preliminary objection, raising the plaintiffs' lack of capacity to sue, and dismissed the complaint: *St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority of Pittsburgh,* 394 Pa. 194, 146 A. 2d 724.

Following that, counsel for the plaintiffs sought to appeal our final order to the Supreme Court of the United States which, on May 4, 1959, dismissed the appeal and, treating the appeal papers as an application for a certiorari, denied certiorari: 359 U.S. 435. Thereafter, on May 11, 1959, the plaintiffs filed a complaint in equity in the United States District Court for the Western District of Pennsylvania, raising the identical questions previously decided by this court adversely to the plaintiffs, as above indicated. A statutory court was convened to hear and determine the Federal proceeding which, on subsequent motion, the three judge court dismissed on the ground that this court's above mentioned decision was *res judicata* of the plaintiffs'

lack of capacity to sue. On the plaintiffs' direct appeal from the district court's decree, the Supreme Court of the United States by a decision on April 25, 1960, dismissed the appeal: *sub nom. Cerminaro v. Urban Redevelopment Authority of Pittsburgh,* 362 U.S. 457.

What the plaintiffs obviously hoped to obtain as bolstering for their complaint in the instant suit is an order from the Vatican compelling the Bishop of Pittsburgh Diocese to join therein as a party plaintiff. Thus, they aver in their present bill, as follows: "29. The Bishop of the Pittsburgh Diocese has refused to join as plaintiff or in any other capacity in any action to protect the rights of St. Peter's Church and of its parishioners. Plaintiffs are making application to the Vatican to instruct the Bishop to take appropriate steps to file or join in an appropriate action to redress the rights of the parishioners. Pending action by the Vatican upon this matter, plaintiffs have joined the present Bishop John J. Wright, as involuntary plaintiff since he is a necessary party. . . . 34. Pending receipt of instructions from the Vatican to the Bishop to direct him to institute an appropriate action in the Federal or State Courts or to voluntarily join in this action, it is absolutely vital to the existence of St. Peter's Church and to the preservation of the rights of the plaintiffs that immediate injunctive relief be granted."

It was undoubtedly for the reasons set forth in the foregoing averments that the court below presumed to grant the temporary injunction restraining the defendant Urban Redevelopment Authority of Pittsburgh from proceeding with the demolition of St. Peter's Roman Catholic Parish Church. The course presently being pursued by the plaintiffs furnishes no justification whatever for the action of the court below in

thwarting, even temporarily, the effect of this court's final decision which is *res judicata* of the plaintiffs' lack of capacity to sue and of the Bishop's exclusive power to dispose of this church property. Designating the Bishop as an "involuntary plaintiff", as the plaintiffs have done in the instant suit, instead of "defendant", as he was denominated in the former suit, is utterly ineffectual to cure the plaintiffs' adjudicated lack of capacity to sue. The present complaint is just as defective as was the complaint in the former proceeding. Obviously, therefore, as this suit now stands (and stood below), it is incapable of supporting any affirmative equitable relief even temporarily. That is *res judicata* in this matter.

How then, did the court below come to enjoin the defendants from pursuing the important public work in which they were presently engaged? Merely because of the averments in the complaint that counsel would go to Rome for the purpose of inducing Vatican authorities to order the Bishop of the Pittsburgh diocese to litigate the plaintiffs' alleged grievances? Incidentally, once before (in 1958) counsel went to Rome for the same avowed purpose, apparently without success. But, however that may be, what the court below did was to grant an injunction without justifiable cause in the prospect that plaintiffs' counsel would go abroad to seek ecclesiastical aid which, if extended, might possibly, in the mind of the court, furnish justification for the antecedently awarded temporary injunction. An extension of equitable relief, in such circumstances, is of course, unwarranted.

Nor is there any longer a justifiable reason why this litigation should not be conclusively and promptly terminated. The Latin maxim, *Interest reipublicae ut sit finis litium,* was never more aptly applicable. It is plain beyond cavil that there was no semblance of

ground for the granting of the temporary injunction which must therefore be dissolved. *Vulcanized Rubber & Plastics Co. v. Scheckter,* 400 Pa. 405, 162 A. 2d 400 (1960); *Herman v. Dixon,* 393 Pa. 33, 141 A. 2d 576 (1958).

There is one further matter that cannot be passed over unnoticed and that is the recent conduct of counsel for the plaintiffs, which was nothing less than contumacious. The record discloses that he filed the plaintiffs' complaint on June 2, 1960, and obtained the preliminary injunction the same day. Counsel for the defendants appealed to this court on June 4, 1960, from the injunctive order and on June 8, 1960, petitioned us to advance argument of the appeal because of the patent urgency of an early final disposition of the proceeding. Plaintiffs' counsel filed on June 10, 1960, an answer to the petition for advancement in the course of which he averred that he ". . . was undertaking a trip to Rome on the basis of an appointment with Vatican authorities for the express objective of having the hierarchy of the Roman Catholic Church issue a proper directive to the Bishop of the diocese of Pittsburgh to join in this or a subsequent action . . ." and, further, that he ". . . will be in Rome from and after June 13, 1960, for a period as yet undetermined and therefore will not be able to prepare properly for the argument . . .". On June 16, 1960, we ordered argument of the appeal advanced to June 30, 1960, in Philadelphia, or, "in the alternative submitted for the court's decision on the pleadings and briefs in the event counsel for the plaintiff should fail to appear". At the time and place appointed, only counsel for the defendants appeared. Counsel for plaintiffs was notably absent; nor did he have anyone appear for him or send any word to the court in extenuation of his absence, although, under the order of the court below, a final hearing on the complaint had been fixed with his evident approval for June 27th in Pittsburgh.

Thus, having set the judicial machinery in motion and having obtained an injunction to which his clients were manifestly not entitled, counsel for the plaintiffs, by his wilful and deliberate absenting of himself, assumed to interfere with the orderly process of this court's appellate jurisdiction. Such conduct was plainly reprehensible and must not be repeated. It is, of course, proper and desirable for an attorney to act zealously in behalf of his clients' interests but he owes no less a duty to the court whose jurisdiction he has invoked, whether directly or indirectly. The oath he takes upon admission to the bar is that he will act "with all good fidelity, as well to the court as to the client . . ."

The order of the court below is reversed, the injunction dissolved, and the complaint dismissed, at the plaintiffs' costs.

---

Dissenting Opinion by Mr. Justice Bell:

This is another attempt to save beautiful St. Peter's Church from destruction. The Chancellor granted a preliminary injunction.

Appellants admit that counsel for plaintiffs has travelled "to Rome on the basis of an appointment with Vatican authorities for the express objective of having the hierarchy of the Roman Catholic Church issue a proper directive to the Bishop of the diocese of Pittsburgh to join in this or a subsequent action. . . ."

The complaint alleges with great particularity specific facts which if proved would amount to gross actual as well as legal fraud and deceit perpetrated on the Bishop. Although complainants allege that the fraud and deceit were intentional, I assume that if any exists it was unintentional but was the result of changes in plans. Equity has always been jealous to protect

against both actual and legal fraud, and the facts alleged undoubtedly amount to gross fraud and would compel a Chancellor to grant equitable relief.

The Bishop is joined as an involuntary plaintiff. In the prior case he was improperly joined as a defendant. See: *St. Peter's v. Urban Redevelopment Authority*, 394 Pa. 194, 146 A. 2d 724. Res adjudicata, on which defendants rely, has no application where, as here, the original decision was based upon the incapacity of plaintiffs to sue or a misjoinder of parties, or both, and not upon the merits: *Scharf v. Richard De Cou Co.*, 320 Pa. 552, 183 A. 41; *Grubb Appeal*, 395 Pa. 619, 151 A. 2d 599; *Grosso v. Englert*, 381 Pa. 351, 113 A. 2d 250; *Macan v. Scandinavia Belting Co.*, 264 Pa. 384, 391, 107 A. 750; 30A Am. Jur., Judgments, §§347, 350; 20 P.L.E., Judgment, §277.

The present case likewise differs from the former case because gross fraud is herein alleged and particularized, and equity, we repeat, is vigilant to prevent fraud.

The sole ground for the destruction of St. Peter's Church is that the area is euphemistically called blighted, i.e., allegedly in need of economic rehabilitation. I cannot understand the spirit of our times which so often places and values the material above the spiritual. The preliminary injunction merely preserves the status quo for three months. If the Vatican favors the defendants they will have been delayed three months; if the injunction is dissolved and the Vatican favors the plaintiffs, they can celebrate their pyrrhic victory by tearfully praying amid the rubble and the ruins. Under all the circumstances, we should certainly give the parishioners several months' opportunity to appeal to the Vatican and save this wonderful Church.

For these reasons I would affirm the Order of the lower Court which granted a preliminary injunction.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I respectfully dissent from the strictures in the Majority Opinion addressed to the attorney for St. Peter's Church. I do not believe that the Majority would deal harshly with an attorney making every effort to save the life of a client sentenced to death. The Church in this case is a living body to its parishioners, and the attorney representing those parishioners is seeking, within the framework of the law, to save the life of one of the most venerable, revered, and architecturally beautiful structures in Pittsburgh.

I believe that counsel should have sought a continuance of the hearing scheduled for June 27th if he intended to be absent on that day, but, the appeal having intervened, he may have believed that the hearing automatically became postponed, and, in fact, it was. However, if he did commit error, it was an error committed on the side of overzealousness in his cause and if that error did no harm, I regret the severe censure appearing in the Majority Opinion.

Nor can I agree, considering the representations made to the lower Court, that its action entitles it to criticism.

Since the order of this Court advancing the date of argument on the appeal was not served on counsel for St. Peter's Church before his departure, I believe that an opportunity should be allowed him to submit a written brief in support of his position, and that proceedings should be suspended for a reasonable period, awaiting the brief.