IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nelson Soler, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 323 M.D. 2022 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Corrections, | : | |
| Respondent | : | Submitted: March 10, 2023 |

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                            FILED:  May 3, 2023

Currently before us are Respondent Commonwealth of Pennsylvania, Department of Corrections' (DOC) preliminary objections to Petitioner Nelson Soler's (Soler) "Amended Petition for Review in Mandamus Challenging the Sentencing Calculation of [DOC]" (Amended Petition). Through this Amended Petition, which was filed in our original jurisdiction, Soler seeks mandamus relief regarding what he contends is DOC's failure to properly calculate the minimum and maximum dates on a state-level carceral sentence that was imposed upon him in 2017. After thorough review, we overrule DOC's preliminary objections in part, sustain them in part, and dismiss the Amended Petition.

## I. Background

The relevant facts, as averred by Soler and gleaned from the record, are as follows. On March 17, 2016, the Pennsylvania Parole Board (Board)[1] paroled Soler on two state-level sentences that he had received in 2014, at which point the maximum date on those sentences was September 23, 2018. DOC's Br. in Support of Prelim. Objs., App. B.[2] In March 2017, Soler was arrested and charged in two separate cases in the Court of Common Pleas of Lehigh County (Common Pleas) with a number of drug-and-firearm-related crimes.[3] Soler then pled guilty in Common Pleas to two counts of possession with intent to deliver and one count of unlawful possession of a firearm. On May 26, 2017, Soler received concurrent sentences on those charges of four to eight years in state prison. Am. Pet. ¶¶1-2. Thereafter, on October 5, 2017, the Board issued a decision in which it declared Soler to be a convicted parole violator (CPV) due to his conviction in CP-39-CR-

---

[1] At that point in time, the Board was known as the Pennsylvania Board of Probation and Parole.

[2] Soler avers in his Amended Petition that he was on parole at the time of his 2017 convictions, as well as that he had nearly three years remaining at that point on his original 2014 sentences upon which he had been paroled, and that the Board imposed backtime upon him as a result of the 2017 convictions. *See* Am. Pet. ¶¶2-4, 6. He also attaches documentation thereto that either provides details regarding his 2014 sentences or refers to the actions taken by the Board towards him. *See id.*, Exs. A, C-H. In light of this, we deem the details of the Board's handling of his parole situation to be incorporated by reference into the Amended Petition, and we may accordingly consider the relevant exhibits that are included with DOC's preliminary objections, despite the fact that Soler failed to attach many of them to his Amended Petition. *See St. Peter's Roman Cath. Parish v. Urban Redevelopment Auth. of Pittsburgh*, 146 A.2d 724, 725 (Pa. 1958); *Detweiler v. Sch. Dist. of Borough of Hatfield*, 104 A.2d 110, 113 (Pa. 1954).

[3] We have filled in some of the informational gaps regarding Soler's numerous convictions by taking judicial notice of the particulars of his state-level criminal cases, as permitted by law. *See, e.g.*, Pa. R.E. 201(b)(2); *Doxsey v. Com.*, 674 A.2d 1173, 1174 (Pa. Cmwlth. 1996). These cases can be found under docket numbers CP-39-CR-0003354-2011, CP-13-CR-0000491-2013, CP-39-CR-0000960-2017, CP-39-CR-0000961-2017, and CP-14-CR-0000402-2019.

0000961-2017, ordered him to serve 24 months of backtime on his 2014 sentences, declined to award him credit for time served at liberty on parole, and recalculated the maximum date on his 2014 sentences as May 19, 2020. *Id.* ¶6; DOC's Br. in Support of Prelim. Objs., App. B.[4] The Board then issued a second decision on December 15, 2017, in which it noted Soler's conviction in CP-39-CR-0000960-2017, but declined to take any additional action against him in response to that conviction. DOC's Br. in Support of Prelim. Objs., App. B. Subsequently, Soler was charged with and pled guilty in the Court of Common Pleas of Centre County to one count of possession of a weapon or implement for escape, for which he received a sentence of three to six months on October 7, 2019, to be served consecutively to his other sentences. Am. Pet. ¶11, Ex. A.

These convictions, and the sentences imposed as a result, eventually led to the current dispute between Soler and DOC. Initially, DOC calculated the minimum and maximum dates on Soler's 2017 sentences as, respectively, April 27, 2021, and July 17, 2025. *Id.* ¶7, Ex. A. However, this changed on April 26, 2021, when DOC issued a revised sentence status summary that reflected its new determination that the minimum and maximum dates on the sentence Soler had received in CP-39-CR-0000961-2017 were, respectively, December 5, 2024, and December 5, 2028. *Id.* ¶9.

Soler believed that DOC's recalculations were wrong and sought to have DOC conform its treatment of his 2017 sentences to what was, in his view, the proper reading of those sentences, *i.e.*, that they were supposed to run concurrently, both with each other and with the aforementioned Board-imposed backtime, and that, as

---

[4] The Board arrived at Soler's new maximum date by using May 26, 2017, *i.e.*, the date upon which he was sentenced by Common Pleas on the March 2017 charges, as the date he returned to the Board's custody, and then calculated forward using the 1089 unserved days that he had remaining on his 2014 sentences. *See* DOC's Br. in Support of Prelim. Objs., App. B.

a consequence, DOC's original minimum and maximum date calculations for those sentences had been correct. *Id.* ¶¶14-22. First, Soler filed a "Petition to Correct Record and Recalculate Sentence" (Correction Petition) with Common Pleas, which Common Pleas granted on June 17, 2021. *Id.*, Ex. B. In doing so, Common Pleas ordered DOC to "correct the April 26, 2021 'Sentence Status Summary' [regarding CP-39-CR-0000961-2017] to accurately reflect a sentence minimum expiration date of April 17, 2021, with a maximum date of July 17, 2025." *Id.* In doing so, Common Pleas explained that the sentences it had imposed in CP-39-CR-0000960-2017 and CP-39-CR-0000961-2017 were supposed to run concurrently, but that DOC had improperly treated the sentences as if Soler was required to serve them in consecutive fashion. *See id.* n.1. DOC did not comply with Common Pleas' order, prompting Soler to file an administrative grievance with DOC on October 25, 2021, through which he requested that DOC revise its calculations to reflect the concurrent nature of his 2017 sentences. *See id.* ¶¶22-23, Ex. C. DOC denied Soler's grievance on November 3, 2021, on the basis that it had correctly calculated the minimum and maximum dates for the sentence imposed in CP-39-CR-0000961-2017. *Id.* ¶24, Ex. D. Soler administratively appealed this denial on November 14, 2021, but this effort was ultimately unsuccessful, as DOC affirmed its disposition of his grievance on May 12, 2022. *Id.* ¶¶25-29, Exs. E-H.

Having struck out with those efforts, Soler's next move was to initiate the instant mandamus action by filing a petition for review with our Court on June 13, 2022. Soler then submitted his Amended Petition on August 22, 2022, in which he asserts that DOC has incorrectly calculated the minimum and maximum dates on the sentence that was imposed in CP-39-CR-0000961-2017, in contravention of the express terms of Common Pleas' original sentencing order and of its order granting

his Correction Petition. *See id.* ¶¶9-21, 30-32. Accordingly, Soler seeks relief in the form of a writ of mandamus "directing [DOC] to recalculate [this sentence's] minimum date to April 17, 2021[,] and [the] maximum date [to] July 17, 2025[,] in accordance with [DOC's] original February 11, 2021 [s]entence [s]tatus [s]ummary and [Common Pleas' orders]." *Id.*, Wherefore Clause. In response, DOC filed the preliminary objections that are the subject of this opinion.

## II. Discussion

In its preliminary objections,[5] DOC presents three arguments for why we should dismiss Soler's Amended Petition, which we reorder and summarize as follows. First, this Court lacks jurisdiction to adjudicate the Amended Petition, because the Board is an indispensable party to the matter, but Soler failed to name it as a respondent. DOC's Br. at 12-13. Second, Soler did not challenge the Board's October 5, 2017 decision, through which it declared him to be a CPV, imposed

---

[5] In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review] and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review].

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). "[C]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review], but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

5

backtime, and revoked credit for time served at liberty on parole, and consequently failed to exhaust his administrative remedies. *Id.* at 7-11. Finally, Soler does not have a clear right to relief, and has thus failed to state a viable mandamus claim, because DOC properly calculated the minimum and maximum dates on the sentence that was imposed in CP-39-CR-0000961-2017. *Id.* at 13-16.

DOC's arguments regarding the allegedly indispensable nature of the Board and about Soler's putative failure to exhaust administrative remedies are without merit. With regard to the former, "[t]he failure to join an indispensable party to a lawsuit deprives the court of subject matter jurisdiction." *HYK Constr. Co. v. Smithfield Twp.*, 8 A.3d 1009, 1015 (Pa. Cmwlth. 2010).

> [The Supreme] Court has stated that a party is indispensable "when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." *Sprague v. Casey*, . . . 550 A.2d 184, 189 ([Pa.] 1988). "[T]he basic inquiry in determining whether a party is indispensable concerns whether justice can be done in the absence of" him or her. *CRY, Inc. v. Mill Serv., Inc.*, . . . 640 A.2d 372, 375 ([Pa.] 1994). In undertaking this inquiry, the nature of the claim and the relief sought must be considered. *See id.* at . . . 375-76.
>
> . . . .
>
> While this joinder provision is mandatory, it is subject to limiting principles. For example, where the interest involved is indirect or incidental, joinder may not be required

*City of Philadelphia v. Com.*, 838 A.2d 566, 581 (Pa. 2003). Furthermore, when considering whether a party is indispensable, a court must, at minimum, consider the following questions:

> 1. Do absent parties have a right or interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?

6

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Mechanicsburg Area Sch. Dist. v. Kline*, 431 A.2d 953, 956 (Pa. 1981). As to the latter,

> a party must first exhaust its administrative remedies before invoking this Court's jurisdiction in challenging a final agency adjudication. *See Canonsburg* [*Gen. Hosp. v. Dep't*] *of Health*, . . . 422 A.2d 141, 144 ([Pa.] 1980). The courts must refrain from exercising equity jurisdiction when there exists an adequate statutory remedy. *Arsenal Coal Co. v.* [*Dept. of Env't Res.*], . . . 477 A.2d 1333, 1338 ([Pa.] 1984); *Funk v.* [*Com.*], 71 A.3d 1097, 1101 (Pa. Cmwlth. 2012). The doctrine of exhaustion of administrative remedies is intended to prevent the premature interruption of the administrative process, which would restrict the agency's opportunity to develop an adequate factual record, limit the agency in the exercise of its expertise, and impede the development of a cohesive body of law in that area. *See Empire Sanitary Landfill, Inc. v.* [*Dept. of Env't Res.*], . . . 684 A.2d 1047, 1054 ([Pa.] 1996); *Shenango Valley Osteopathic* [*Hosp.*] v. [*Dept.*] *of Health*, . . . 451 A.2d 434, 438 ([Pa.] 1982); *Bucks* [*Cnty. Servs.*], *Inc. v.* [*Phila.*] *Parking* [*Auth.*], 71 A.3d 379, 388 (Pa. Cmwlth. 2013). "The doctrine operates as a restraint on the exercise of a court's equitable powers and a recognition of the legislature's direction to comply with statutorily[]prescribed remedies." *Empire Sanitary*, 684 A.2d at 1054.

*Keystone ReLeaf LLC v. Pa. Dep't of Health*, 186 A.3d 505, 513 (Pa. Cmwlth. 2018). In this instance, Soler challenges DOC's calculations regarding the sentence he received in CP-39-CR-0000961-2017, on the basis that DOC has failed to comply with Common Pleas' aforementioned orders, but he does not take issue with the Board's handling of his parole violations. *See* Am. Pet. ¶¶9-22, 30-32, Wherefore Clause. As a result, the Board's interests are not implicated in this instance, nor

would the administrative remedies that were available to Soler through the Board have offered him the ability to secure the relief he now seeks. Accordingly, the Board is not a party that is indispensable to this matter and Soler did not fail to exhaust his administrative remedies.

We come to a different conclusion, though, regarding the merits of DOC's remaining argument, through which it demurs to Soler's mandamus claim.

> A proceeding in mandamus is an extraordinary remedy at common law, designed to compel the performance of a ministerial act or mandatory duty. *Duncan v.* [*Pa. Dep't of Corr.*], 137 A.3d 575, 576 (Pa. 2016); *Allen . . .* , 103 A.3d [at] 370 . . . . "The purpose of mandamus is not to establish legal rights, but to enforce those rights already established beyond peradventure." *Allen*, 103 A.3d at 369 (quoting *Detar v. Beard*, 898 A.2d 26, 29 (Pa. Cmwlth. 2006)). "This Court may only issue a writ of mandamus where: (1) the petitioner possesses a clear legal right to enforce the performance of a ministerial act or mandatory duty; (2) the [respondent] possesses a corresponding duty to perform the act; and (3) the petitioner possesses no other adequate or appropriate remedy." *Id.* at 370; *accord Duncan*, 137 A.3d at 576. "Mandamus can only be used to compel performance of a ministerial duty and will not be granted in doubtful cases." *Allen*, 103 A.3d at 370. "Notwithstanding, mandamus is an appropriate remedy to correct an error in DOC's computation of maximum and minimum dates of confinement where the sentencing order clearly gives the inmate credit for the time period in question and DOC's computation does not comply with that credit." *Allen*, 103 A.3d at 370. However, mandamus is not available to compel the performance of an illegal sentencing order. *Duncan*, 137 A.3d at 576; *Fajohn v.* [*Dep't of Corr.*], 692 A.2d 1067, 1068 (Pa. 1997); *Lawrence v.* [*Pa. Dep't of Corr.*], 941 A.2d 70, 72 (Pa. Cmwlth. 2007); [*Com.*] *v. Kelley*, 136 A.3d 1007, 1013-14 (Pa. Super. 2016). When a parolee is convicted of a new criminal offense committed while on parole and punishable by prison time, the Board has the authority, in its discretion, to recommit the parolee as a [CPV]. Section

8

6138(a) of the [Prisons and] Parole Code [(Parole Code)], 61 Pa C.S. § 6138(a). Upon recommitment of a parolee, the Board may order him to serve some or all of the remainder of his original sentence as backtime. *Id.* Where the Board orders a parolee to serve backtime, this time must be served before the commencement of the new term. *Id.* Specifically, Section 6138(a)(5)(i) of the Parole [Code] provides:

> (5) If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases:
>
>> (i) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution.

61 Pa C.S. § 6138(a)(5)(i). In other words, "the original sentence and any new sentences must be served consecutively rather than concurrently." *Kerak v. [Pa. Bd. of Prob. & Parole]*, 153 A.3d 1134, 1138 (Pa. Cmwlth. 2016); *accord Allen v. [Pa. Bd. of Prob. & Parole]*, 207 A.3d 981, 985-86 (Pa. Cmwlth. 2019). A "sentencing judge has no authority to order" otherwise. *Kerak*, 153 A.3d at 1138 (quoting [*Com.*] *v. Draper*, 293 A.2d 614, 615 (Pa. Super. 1972)). The imposition of a new state sentence to run concurrently with a parolee's backtime on the original sentence is considered an illegal sentence. *Duncan*, 137 A.3d at 576; *Kelley*, 136 A.3d at 1013-14; *see Lawrence*, 941 A.2d at 72. Although sentencing courts are generally authorized to impose sentences to run consecutively or concurrently under Section 9721 of the Sentencing Code, 42 Pa. C.S. § 9721, they are not empowered to direct a new sentence to run concurrently with a prisoner's state parole violation sentence in violation of the Parole Code. *See Duncan*, 137 A.3d at 576; *Kelley*, 136 A.3d at 1013-14; *see Lawrence*, 941 A.2d at 72.

*Bivens v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 192 M.D. 2018, filed Mar. 11, 2020), slip op. at 4-6, 2020 WL 1171089, at *2-*3.[6]

Returning to the matter at-hand, it is evident that Common Pleas' sentencing order was unlawful, as it effectively directed that Soler was to serve his 2017 sentences concurrently with the CPV backtime imposed upon him by the Board regarding his 2014 sentences. *See* Am. Pet., Ex. B. Given this, DOC lacked legal authority to abide by Common Pleas' calculations regarding the minimum and maximum dates on Soler's 2017 sentences. Soler thus does not possess a clear right to mandamus relief regarding DOC's handling of the sentence that was imposed upon him in CP-39-CR-0000961-2017.[7]

---

[6] Pursuant to section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value.

[7] Though the issue is not part of this matter, we must also take issue with the Board's and Soler's apparent belief that Soler could serve his sentence for CP-39-CR-0000960-2017 concurrently with the aforementioned Board-imposed backtime. Soler avers in his Amended Petition that "the . . . Board noted his conviction on CP-3[9]-CR-000960-2017 and ran it concurrently with the [backtime] the . . . Board gave [him] for the parole violation." Am. Pet. ¶5. Additionally, DOC stated, in its November 3, 2021 denial of Soler's administrative grievance, that the Board informed Soler on October 13, 2021, that "[his] sentence at [CP-39-CR-000960-2017] was running concurrently with [the CPV] back time [sic] [the Board had imposed] because the Board [had] noted that conviction." Am. Pet., Ex. D; *cf.* DOC's Br. in Support of Prelim. Objs., App. B (Board decision in which it noted Soler's conviction in CP-39-CR-000960-2017, referred to the CPV backtime it had imposed upon him in CP-39-CR-000961-2017, and declined to take any additional action against him). As just discussed, though, Section 6138(a)(5)(i) of the Parole Code mandates that Board-imposed backtime on an original sentence be served before a parolee can begin serving a new, state-level sentence. *See* 61 Pa C.S. § 6138(a)(5)(i); *Palmer v. Pa. Bd. of Prob. & Parole*, 134 A.3d 160, 165 (Pa. Cmwlth. 2016) ("[T]he Board may not impose backtime to run concurrently with a new sentence for an offense committed while on parole."). Thus, by law, Soler could not begin serving his sentences for CP-39-CR-000960-2017 *or* CP-39-CR-000961-2017 until he had completed that backtime.

10

### III. Conclusion

In accordance with the foregoing analysis, we overrule DOC's preliminary objections regarding Soler's putative failure to join all indispensable parties and exhaust his administrative remedies, sustain DOC's demurrer to Soler's mandamus claim, and dismiss the Amended Petition.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nelson Soler, :
                Petitioner :
                 :
     v. : No. 323 M.D. 2022
                 :
Commonwealth of Pennsylvania, :
Department of Corrections, :
             Respondent :

**O R D E R**

AND NOW, this 3rd day of May, 2023, it is hereby ORDERED:

1. Respondent Commonwealth of Pennsylvania, Department of Corrections' (DOC) preliminary objections regarding Petitioner Nelson Soler's (Soler) putative failure to join all indispensable parties and exhaust his administrative remedies are OVERRULED;

2. DOC's preliminary objection in the nature of a demurrer to Soler's mandamus claim is SUSTAINED;

3. Soler's "Amended Petition for Review in Mandamus Challenging the Sentencing Calculation of [DOC]" is DISMISSED.

                            _____
                            ELLEN CEISLER, Judge