Post et al., Appellants, *v.* Dougherty et al.

Argued January 27, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*H. O. Bechtel,* with him *Walter Sidoriak,* for appellants.

*Daniel C. Donoghue,* with him *James J. Gallagher,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, March 22, 1937:

About the year 1872 the Holy Family Congregation, an unincorporated association, located in Shenandoah, Pennsylvania, was created as a Roman Catholic national parish for parishioners speaking German. It was under the jurisdiction of the Roman Catholic Church and subject to its church canons and discipline. Buildings were erected consisting of a church, a parochial school, a convent and a rectory. Since the establishment of the parish the members thereof have always recognized and conformed to the canons and discipline of the Roman Catholic Church and have continuously used the property for the worship of God in accordance with the Roman Catholic faith and rules.

In 1934 the church building was condemned and razed as a result of serious injuries caused to it by coal mining operations on adjacent lands. Cardinal Dougherty, as trustee of the congregation, received the sum of forty thousand dollars in settlement of the damages to the church edifice.

The Cardinal Archbishop, in the same year, felt that the church should be closed, because the members of the parish, totaling about thirty-five families, spoke and were preached to in the English language and it was unwise and imprudent to restore the church due to the existing hazard of mining operations. Accordingly he recommended to the Sacred Congregation of the Council the suppression of the parish of the Holy Family Congregation. In requesting authority to abolish this parish, he suggested that it be fused with the secular parish made up of English-speaking members. On September 20, 1934, the Holy Congregation of the Council, acting for the Holy See at Rome, which alone is vested by the Roman Catholic canons with the power to suppress national parishes, granted Cardinal Dougherty the power requested. In due exercise of the authority delegated to him, he abolished the Holy Family Parish. The suppression was wholly in accordance with the church canons and done in a regular manner by the proper church authorities. In fact, appellants admitted that the Holy Family Parish of Shenandoah was suppressed on the above mentioned date.

Under the Roman Catholic canons the suppression of a parish renders it extinct. Those who are members of the suppressed parish automatically become members of the secular parish in which they live, which, in the case at bar, is the Annunciation Parish of Shenandoah, Pennsylvania.

On October 5, 1934, the Cardinal informed the rector of the Holy Family Parish of its suppression, and, on October 7, 1934, at the customary religious services the rector announced to the lay members the Cardinal's or-

der and their transfer to membership in the Annunciation Parish. A German priest was assigned as an assistant to the latter church, for the specific purpose of taking care of the spiritual needs of the members of German descent transferred from the Holy Family Parish. This was in compliance with the order of the Sacred Congregation of the Council authorizing Cardinal Dougherty to suppress the parish, conditional upon "having, however, properly provided for the care of those souls of his faithful of the German language." The members of the Holy Family Parish, on receipt of this notice, held a meeting, and elected officers and a board of trustees. Those elected brought this bill to restrain Cardinal Dougherty and others from interfering with the use of the property of the congregation by its members, and to compel a transfer of the parochial property, real and personal, to their trustees. Cardinal Dougherty then filed a petition for his appointment as trustee under Section one of the Act of May 17, 1921, P. L. 861, to preserve the property in the interests of the Roman Catholic Church in the Archdiocese of Philadelphia, Pennsylvania. The court below, under agreement, heard the bill and petition together, and entered one order covering both. They will be considered here in one opinion.

Appellants proceeded upon the theory that Cardinal Dougherty was a mere custodian, a dry trustee of the property for the members of the Holy Family Congregation, and that absolute control and disposition was vested in them, as lay members, under the Act of April 26, 1855, P. L. 328, Section 7, free from any interference by the Cardinal. They contend that the Act of June 20, 1935, P. L. 353, Section 1, vesting the power of control and disposition of church property, acquired both before and after its enactment, in the church officers or authorities having a controlling power according to the rules of the church or religious society is unconstitutional, because it deprives the lay members of vested property rights, and constitutes a taking of property

without due process of law.  They assert that the Act of 1921 does not apply, as the suppression of their parish did not render it extinct within the meaning of that statute.

The court below found that the Holy Family Parish had been suppressed on September 20, 1934, and the effect of its suppression under the church law was to render it extinct and to cause its members to be transferred, ipso facto, to membership in the Annunciation Parish.  It held that as appellants lost their membership in the Holy Family Parish, they had no standing to assert any rights which they, as members, may have formerly had in the property of the parish.  It dismissed the bill and appointed Cardinal Dougherty trustee of the property.

The facts of the case at bar bring it squarely within the principles laid down in the recent case of *Canovaro v. Brothers of the Order of Hermits of St. Augustine,* 326 Pa. 76.  The sole distinction of any importance between the two cases is the fact that the *Canovaro* case involved the dismemberment of a Roman Catholic religious parish, while the instant case concerns the suppression of a Roman Catholic national parish, created for those who speak a foreign language and are unable to understand English.  Bishop O'Hara, an authority on Roman Catholic canon law, called by appellees, testified that national parishes are unusual, and their creation and suppression are reserved to the Holy See, while the canons empower the Ordinaries to divide or dismember secular parishes.  This difference does not change the principles of substantive law applicable to the two cases.

As this court pointed out in the *Canovaro* case, any rights which the laity may have in church property can arise only out of membership in the congregation; also that membership in a congregation and the division, dismemberment or suppression of parishes are purely ecclesiastical matters subject to the church rules and con-

trolled by the decisions of the appropriate church tribunals in so far as they do not contravene the law of the land. The act of the Holy See in suppressing the Holy Family Parish was a proper exercise of the jurisdiction conferred by the canons upon the Holy See acting through the Sacred Congregation of the Council. The reasons for its suppression, their existence in fact and sufficiency to warrant the extinction of the parish are matters for the Holy See; it alone had final and exclusive jurisdiction, and its decision must be accepted as binding on this court. We do not review the merits of a decision rendered in an ecclesiastical matter by the appropriate church tribunal or official. This was fully discussed in the *Canovaro* case.

The effect of the suppression of the parish was to cause the lay members to lose their membership therein, and become members of another parish. Having lost their membership in the parish, they have no standing to maintain a bill in equity to enforce any property rights which they may have had in their former capacity as members of the parish, as the court below decided.

We said in the *Canovaro* case that the Catholic canons provide for the disposition of the property of a dismembered parish. It is much the same in the case of a suppressed parish. Under canon 1501 of the Roman Catholic Church title to the property of a suppressed or dismembered parish passes to its immediate superior, who, in this case, is Cardinal Dougherty, the Archbishop of the Diocese of Philadelphia. This canon confers upon the Ordinary the right to hold the property and exercise control over it in furtherance of the worship of God in accordance with the Roman Catholic faith and laws in the Archdiocese of Philadelphia, Pennsylvania. Accountability therefor is an ecclesiastical matter under church laws and is not a subject for the civil tribunals.

However, like the *Canovaro* case, the decision of the case at bar is controlled by the Act of 1935, supra, which was enacted after the testimony was taken but before

the chancellor's decree was entered and was not considered by the court below. The question of the constitutionality of this statute as applied to property acquired prior to its enactment was considered at length in that case, where we held it did not operate to divest lay members of a vested interest in church property without due process of law, overruling the very contention advanced by appellants here. We have carefully considered the recent New Jersey case of *St. John The Baptist Greek Catholic Church of Perth Amboy, N. J., v. Gengor et al.,* 121 N. J. Eq. 349, 189 A. 113, and, without discussing its merits, find it distinguishable on its facts. Under our Act of 1935 the church rules are decisive of the question who shall have the power of control and disposition of the property of the subordinate bodies of a religious denomination, and, as mentioned above, the Roman Catholic canons vest this power in the Ordinary of the Diocese with respect to the property of a suppressed parish.

One other question remains to be disposed of, that is, the appointment of Cardinal Dougherty as trustee of the property, real and personal, of the suppressed parish under the Act of June 5, 1913, P. L. 435, Section 1, as amended by the Act of May 17, 1921, P. L. 861, Section 1.* Appellants contend the court below exceeded its jurisdiction in granting the petition; first, because the Holy Family Congregation was not inactive or extinct within the meaning of the Act, and, secondly, the

---

* "When any individual church . . . shall become inactive or extinct, by reason of there being no resident or active trustees representing it or otherwise, the court of common pleas of the county wherein said church . . . is located may appoint as trustees of said church . . . the trustees or body corporate of the superior judicatory with which such church has been connected . . . or the trustees of the State body or organization representative of the denomination of which said church was a member, or any other appropriate board or agency of such religious organization, if duly incorporated under the laws of any State of the United States, to take, to administer, hold and dispose of the title to the property of said church."

trustee must be incorporated. While we do not consider a discussion of the Act and the appointment necessary because of the Act of 1935, neither of these objections raised to it can be sustained. When a subordinate body of a church becomes extinct under the law of the denomination to which it belonged, its existence as a church ceases for all purposes. With the Act of 1921 in force, the suppression of the Holy Family Parish caused it to be extinct within the meaning of that Act. In *Mt. Calvary Methodist P. Church Trustees*, 272 Pa. 453, the church was not extinct under the church constitution and laws when sufficient members existed to fill the offices, as the evidence showed to be the fact; the church law was there accepted as controlling the status of the congregation.

The Act of 1921 does not provide that the trustee must be incorporated. The statute empowers the court to appoint "the trustees *or* body corporate of the superior judicatory with which said church has been connected." The word "or" is plainly used in a disjunctive sense and empowers the court to appoint the trustees of the superior judicatory, although they are not incorporated.

The appointment of Cardinal Dougherty as trustee was proper and was the only appointment the court below could make. Upon the suppression of a Roman Catholic parish, its temporalities pass to the ecclesiastical persons immediately superior to it, which, in the instant case, is the Archdiocese of Philadelphia, under the jurisdiction of the Ordinary, here Cardinal Dougherty. The church canons so provide. The Act of 1935 gives effect to the designation of control and disposition of the property of a suppressed parish under the church laws of the particular denomination. Here it is in the Ordinary of the diocese in furtherance of the purposes for which it was dedicated. It is not necessary to petition for the appointment of a trustee under the Act of 1921 where the church laws provide for the control and

disposition of the property. But, it may be done, if it is deemed advisable by the church authorities to have judicial confirmation of the right of those vested with such power by the church law under the Act of 1935 to act as trustees. Where a subordinate body of a denomination becomes extinct or inactive within the meaning of the Act of 1921, and that Act is invoked, it necessarily follows that the trustee appointed must be the one who is given the right of control and disposition by the church rules and regulations, if they provide for such a contingency. The appointment of Cardinal Dougherty was strictly in conformity with the Roman Catholic canons governing the disposition of the property of a suppressed parish. It amounts to no more than an official confirmation by the court of the power vested in him by the church canons and secured to him by the Act of 1935. While it was perfectly proper for Cardinal Dougherty to petition for his appointment as trustee under the Act of 1921, his action in so doing was not compulsory and can only be considered in the light of a precautionary measure to procure judicial recognition of the rights vested in him under the church canons by the Act of 1935.

Decree affirmed at appellants' cost.