# Lamb, Bishop, etc., v. Yencsik

*Smith, Best & Horn,* for plaintiff.
*Carson & Carson,* for defendant.

O'CONNELL, J., April 27, 1954.—We have before us a matter in the form of a case stated in assumpsit for the purpose of obtaining a judicial determination of the right of plaintiff, the Most Reverend Hugh L. Lamb, bishop of the Roman Catholic diocese of Greensburg, Pa., to convey or encumber the real property of the various Roman Catholic Church organizations within the jurisdiction, without the action of members of the various congregations, and without a petition to the courts of the counties under the terms and provisions of the Price Act, filing of bond, etc.

There is no dispute between the parties concerning the subject matter of the conveyance, the price to be paid, time of delivery of possession, liens or other matters. The sole question is: Whether the deed of the bishop will convey a good and marketable title to defendant.

By deed dated February 1, 1928, and recorded in the Recorder's Office of Westmoreland County, Pa., in deed book 871, page 21, there was conveyed by Nan P. Fisher, widow, et al., to the Right Rev. Hugh C. Boyle, Roman Catholic bishop of the diocese of Pittsburgh, a lot of ground situate in the Borough of North Belle Vernon, Westmoreland County, Pa., designated

and known as lot no. 427 in the plan of S. F. Jones & Company's addition to North Belle Vernon, which plan is of record in the Recorder's Office of Westmoreland County, in plan book 1, page 183, the said lot fronting 60 feet on Speer Street, between Baltimore Street and Apple Alley, and running back of equal width 100 feet to Pearl Alley.

The conveyance to the Right Rev. Hugh C. Boyle provides:

"To have and to hold the said lots of ground, buildings, in trust, nevertheless, for the Roman Catholic congregation of St. Sebastian Church, North Belle Vernon, Westmoreland County, Pennsylvania."

The Court of Common Pleas of Westmoreland County, at no. 2617 in equity, designated and decreed the Most Rev. Hugh L. Lamb, bishop of the Roman Catholic diocese of Greensburg, Pa., to be the trustee or successor trustee of all church property within the jurisdiction of the diocese of Greensburg, Pa., and successor in trust to the Right Rev. Hugh C. Boyle, Roman Catholic bishop of the diocese of Pittsburgh, Pa.

On or about April 1, 1953, plaintiff and defendant entered into an agreement in writing, by which plaintiff, in consideration of the payment by defendant of the sum of $2,000, agreed to convey to defendant the lot of ground hereinabove more particularly described, and which defendant agreed to purchase, and upon account of the purchase price of said lot, defendant has paid as hand money the sum of $500 in cash, which sum is to be returned to defendant in the event good and marketable title in fee simple for the premises cannot be conveyed to him.

Plaintiff has tendered to defendant a deed conveying the lot of ground above-described, executed by plaintiff, the Most Rev. Hugh L. Lamb, bishop of the Roman Catholic diocese of Greensburg, Pa., successor trustee.

Defendant has refused to accept the deed of conveyance, hereinabove more particularly referred to, and pay the purchase price for the lot of ground therein described, unless and until plaintiff obtains the approval of the proper court of the County of Westmoreland under the terms and provisions of the Price Act.

The matter involves an interpretation of the Act of June 20, 1935, P. L. 353, 10 PS §81, and specifically whether or not this act has the effect of negativing the operation of the Price Act in the present situation.

The Act of 1935 reads in part as follows:

"Whensoever any property, real or personal, has heretofore been or shall hereafter be bequeathed, devised, or conveyed to any ecclesiastical corporation, bishop, ecclesiastic, or other person, for the use of any church, congregation, or religious society, for or in trust for religious worship or sepulture or for use by said church, congregation or religious society, for a school, educational institution, convent, rectory, parsonage, hall, auditorium, or the maintenance of any of these, the same shall be taken and held subject to the control and *disposition* of such officers or authorities of such church, congregation, or religious society, having a controlling power according to the rules, regulations, usages, or corporate requirements of such church, congregation, or religious society, which control and *disposition* shall be exercised in accordance with and subject to the rules and regulations, usages, canons, discipline and requirements of the religious body, denomination or organization to which such church, congregation, or religious society shall belong, . . ."

The applicable sections of the Revised Price Act, which is in substance a revision of the Price Act of April 18, 1853, P. L. 503, are sections 1 and 2 (20

PS §1561, 1562, 1563), which follow. Section 1 of the act provides that:

". . . The Court of Common Pleas of each county of this Commonwealth, shall have jurisdiction with respect to real estate situate within the county, and, in the cases hereinafter specified, to authorize or confirm:—

"(a) the sale . . . thereof. . . ."

Section 2 of the act provides that:

"The several courts aforesaid shall exercise the jurisdiction conferred by Section one of this Act in all cases—

"(a) Where the legal title is held . . . (Five) By a corporation of any kind, or individual or individuals and is subject to a trust of any description whatever. . . ."

It is argued by defendant that the Price Act, having been amended in 1937 and 1941, would under the Statutory Construction Act take precedence over previous enactments such as the Act of 1935 hereinabove referred to. The section of the Statutory Construction Act relied upon by defendant for this position is as follows:

"Whenever the provisions of two or more laws passed at different sessions of the Legislature are irreconcilable, the law latest in date of final enactment shall prevail": Act of May 28, 1937, P. L. 1019, art. IV, sec. 66.

We are of opinion that these two acts can be reconciled. The other applicable sections of the Statutory Construction Act not cited by defendant are as follows:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions . . .": Act of 1937, P. L. 1019, art. IV, sec. 51.

"In ascertaining the intention of the Legislature in

the enactment of a law, the courts may be guided by the following presumption among others:

"(2) That the Legislature intends the entire statute to be effective and certain;—

"(4) That when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language;—": Act of 1937, P. L. 1019, art. IV, sec. 52.

"Laws or parts of laws are in pari materia when they relate to the same persons or things or to the same class of persons or things.

"Laws in pari materia shall be construed together, if possible, as one law": Act of 1937, P. L. 1019, art. IV, sec. 62.

The Act of 1935, above referred to, has been declared constitutional, and in the year 1937, speaking through Mr. Chief Justice Kephart, our Supreme Court had this to say:

"Turning to the Act of 1935, the extent and effect of the change brought about by it is immediately made clear when its provisions are contrasted with the Acts of 1855 and 1913 preceding it. The Act of 1855 vested in the church laity absolute control and disposition of church property subject to the uses for which it was lawfully dedicated. The Act of 1935 provides that whenever any property has heretofore been or shall hereafter be conveyed for the use of any church, congregation or religious society or in trust for religious worship or sepulture, it shall be taken and held subject to the control and *disposition* of such officers or authorities of such church, congregation or religious society having a controlling power according to the rules of such church, congregation or religious society, 'which control and disposition shall be exercised in accordance with and subject to the rules and regulations, usages, canons, discipline and requirements of

the religious body, denomination or organization to which such church, congregation or religious society shall belong.' The Act is comprehensive enough to include all property, real or personal, of churches, congregations or religious societies acquired by gift, purchase, grant or devise": Canovaro et al. v. Brothers of the Order of Hermits, St. Augustine, 326 Pa. 76, 87.

"It is not necessary to petition for the appointment of a trustee under the Act of 1921 where the church laws provide for the control and disposition of the property. But, it may be done, if it is deemed advisable by the church authorities to have judicial confirmation of the right of those vested with such power by the church law under the Act of 1935 to act as trustees": Post et al. v. Dougherty et al., 326 Pa. 97, 104.

It has also been decided by our appellate court that the control, disposition and management of the property of a church, as well as other ecclesiastical matters, are subject to and are *exclusively* governed by the laws, canons, rules and regulations of such church.

"From the findings referred to, and others, the conclusion is irresistible that St. John's Church was organized and dedicated as and is a Greek Catholic Church united with Rome. We are of the unanimous opinion that under all the evidence in the case no other conclusion could properly have been arrived at. It follows that the control, disposition and management of the property of this church, as well as other ecclesiastical matters, are subject to and are exclusively governed by the laws, canons, rules and regulations of such church": Morris v. Featro et al., 340 Pa. 354, 360.

While these opinions of the Supreme Court do not deal directly with the question here involved; namely, the effect of the Price Act, this matter has been decided by the learned Judge Trimble in Allegheny County, and we quote from his opinion:

"The bishop, as ordinary, has the right to control and dispose of church property under the canons of the church which he represents. After reading the Canovaro and Post cases, supra, where the subject of control and disposition of church property is exhaustively reviewed, it is difficult to see the necessity for invoking the Revised Price Act here. We have been referred to Seif v. Krebs, 239 Pa. 423, where it is held that lands dedicated to a charitable or religious use must be sold under the procedure set forth by the Act of April 18, 1853, P. L. 503, the predecessor to the present Revised Price Act. The Act of 1935, supra, removes church property from the ruling in that case": Keefe's Estate, 42 D. & C. 426, 428.

It should also be noted that the Price Act, and the various revisions thereof, had as their purpose the making of property freely alienable. The preamble to the original Price Act of 1853 being of an explanatory nature is as follows:

"Whereas, the general welfare requires that real estate should be freely alienable and be made productive to the living owners thereof: And whereas, in matters which the judiciary is competent to hear and decide, it is expedient that the court should adjudicate them after a full hearing of all parties, rather than that they should be determined by special legislative acts upon an ex parte hearing."

The Act of 1853 was intended, as the preamble shows, to unfetter titles and facilitate their transmission by permitting the court, after notice to all parties in interest, to decree sales in cases which were previously reached by special legislative acts, passed upon ex parte hearings, and liable to be declared unconstitutional. See Fisher's Appeal, 162 Pa. 232, and Burton's Appeal, 57 Pa. 213. We are of opinion that it would be defeating the purpose of the Price Act to fetter the real estate of religious organizations by

requiring court approval for each and every transaction entered into. It is our opinion that if the legislature could, by the Price Act, unfetter real estate and make property freely alienable in certain cases, that the legislature also had the power to go a step further and relieve the various religious denominations of the obligation of complying with the requirements of the Price Act.

### Decree

And now, to wit, April 27, 1954, judgment is entered in favor of plaintiff, the Most Rev. Hugh L. Lamb, bishop of the Roman Catholic diocese of Greensburg, Pa., trustee for St. Sebastian's Roman Catholic Church of Belle Vernon, and against Michael E. Yencsik, defendant, for the sum of $1,500.