**The Roman Catholic Congregation of
St. Elizabeth Church v. Wuerl**

392

*Phillip J. Binotto* and *Dale J. Gregg,* for the plaintiffs.
*Philip J. Murren* and *Maura K. Quinlan,* for defendants.

GILMORE, *J.,* December 14, 1994—This matter is before the court on a complaint in equity seeking injunctive relief to enjoin the Roman Catholic Diocese of Pittsburgh, through Bishop Donald W. Wuerl, from suppressing, or closing, St. Elizabeth's Church in Lawrence, Washington County, Pennsylvania. The plaintiffs/petitioners in this matter are representatives of the congregation of the suppressed parish.

On various dates the court conducted hearings and took substantial evidence on plaintiffs' petition. The court initially would note that the petitioners have clearly demonstrated their devotion and concern for St. Elizabeth's. Many of the members of the suppressed parish have worshipped at St. Elizabeth's their entire lives and have sacrificed time, effort and financial resources for the parish. The court is moved by these past endeavors as well as petitioners' current willingness to expend further funds and efforts to litigate this matter. Despite the court's admiration, however, it must be understood that the court's duty is to dispassionately follow the law in resolving this dispute.

Preliminarily, defendant, Bishop Wuerl, has questioned petitioners' standing to bring this action. Standing merely refers to a party's capacity to bring suit. In order to have standing, or the capacity to sue, the law

requires that a party have a substantial, direct and immediate interest in the action. *Guzman v. Cooper,* 420 Pa. Super. 304, 616 A.2d 705 (1992); *In re Francis Edward McGillick Foundation,* 406 Pa. Super. 249, 594 A.2d 322 (1991), *allocatur granted,* 529 Pa. 649, 602 A.2d 860 (1992). Basically this means that a party's rights must have been invaded or infringed. See *Sierra Club v. Hartman,* 529 Pa. 454, 605 A.2d 309 (1992).

In this case, petitioners claim to have an actionable interest or right stemming from their status as beneficiaries of the ecclesiastical property held by the church. It is true that the property of St. Elizabeth's parish was originally conveyed to bishops who were to hold the property in trust for the Roman Catholic congregation of St. Elizabeth's Church. This, however, does not cloak the petitioners with standing.

Church property which is held in trust for a congregation is governed by the Act of June 20, 1935, P.L. 353, 10 P.S. §81. The relevant portions of that statute provide:

"Section 81. Church property to be subject to control of officers or authorities thereof; validation of certain charters

"Whensoever any property ... has ... been ... bequeathed, devised, or conveyed to any ecclesiastical corporation, bishop, ecclesiastic, or other person, for the use of any church, congregation, or religious society, for or in trust for religious worship or sepulture, ... the same shall be taken and held subject to the control and disposition of such officers or authorities of such church, congregation, or religious society, having a controlling power according to the rules, regulations, usages, or corporate requirement of such church, congregation, or religious society, which control and disposition shall be exercised in accordance with and subject to the rules

and regulations, usages, canons, discipline and requirements of the religious body, denomination or organization to which such church, congregation, or religious society shall belong, but nothing herein contained shall authorize the diversion of any property from the purposes, uses, and trusts to which it may have been heretofore lawfully dedicated, or to which it may hereafter, consistently herewith, be lawfully dedicated."

This language permits conveyances to religious organizations to specify that the property be held in trust for a congregation. Nevertheless, the conveyed property, in such a case, is to be held subject to the control and disposition of church authorities. The appellate courts which have examined 10 P.S. §81 have determined the net effect of its statutory language to be that parishioners for whom ecclesiastical property is held in trust have no proprietary rights in the property. Rather, the property is actually owned by the religious organization or church vested with its control and disposition. *Canovaro v. Brothers of the Order of Hermits of St. Augustine,* 326 Pa. 76, 191 A. 140 (1937); *Post v. Dougherty,* 326 Pa. 97, 191 A. 151 (1937); *St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority of Pittsburgh,* 394 Pa. 194, 146 A.2d 724 (1958).

In *Canovaro, supra,* a parish was dismembered by the Roman Catholic Diocese of Philadelphia. Members of the dismembered parish sought equitable relief from the court in order to save the parish. The Supreme Court held, however, that 10 P.S. §81 renders absolute a religious society's control over its properties. *Id.* at 88, 191 A. at 148. This holding recognized ownership of the property by the church. Accordingly, the parishioners, who had no actual property right in the church holdings, lacked the standing to sue.

Moreover, the court concluded, as a second basis, that parishioners lacked standing once their parish had been dismembered. Upon an order of dismemberment, the parish ceased to exist, as did a member's rights as a parishioner. *Id.* at 84, 191 A. at 145. Therefore, the members' capacity to maintain an action regarding church property was extinguished with their parishioner status. *Id.* at 87, 191 A. at 147.

*Post, supra,* decided on the same day as *Canovaro,* reiterates the same principles. There, as here, a parish was suppressed by the Roman Catholic Church. Again our Supreme Court noted that the church governed the control of its properties, *Post, supra* at 103, 191 A. at 154, and that as the parish had been suppressed, the former parishioners enjoyed no capacity to seek injunctive relief. *Id.* at 102, 191 A. at 153.

A later Supreme Court case also concluded members lacked the capacity to sue. In *St. Peter's Roman Catholic Parish, supra, Canovaro* and *Post* were summarized in the following manner:

"The dispositve rule is that plaintiff, as a parish or congregation, has no standing to sue. The bishop owns the property, in trust for the parish, and alone may dispose of it in accordance with the canons of the Roman Catholic Church....

"The cases of *Canovaro v. Brothers of the Order of Hermits of St. Augustine,* 326 Pa. 76 (1937), and *Post v. Dougherty,* 326 Pa. 97 (1937), hold clearly that a member of a parish has no property right in his membership or any property right in church property save as a member; that his rights are governed by the laws of his denomination; and that the Roman Catholic canons and the decisions of the appropriate tribunals and officials of the church control the issues raised in the case, unless those canons and decisions should con-

travene the law of the land. Both cases involved extinction of a parish by proceedings in accordance with church regulations. If a parish can be extinguished, a church building can be razed." *St. Peter's, supra* at 198, 146 A.2d at 726.

This court cannot ignore these controlling cases or statutory authority. It is clear, therefore, that the former parishioners lack the standing to bring this equity action. First because the only interest the petitioners ever had in this matter derived from their status as members of St. Elizabeth's parish. At present, however, the Catholic Church has suppressed the parish, as the church is entitled to do. Hence, the parish no longer exists and the petitioners are no longer parish members. Second because the petitioners have no proprietary rights with regard to the church property. The Roman Catholic Church owns the property for use in its mission to provide for the Roman Catholic faith. This leaves petitioners without a legally cognizable interest.

In addition, even if this court were to overlook petitioners' lack of standing and examine the merits of their claims, petitioners would still not be entitled to the relief they are requesting.

The grant of a permanent injunction requires the fulfillment of two elements. The petitioners must establish that they have a clear right to relief, and that irreparable harm will occur if relief is not granted. *Carringer v. Taylor,* 402 Pa. Super. 197, 586 A.2d 928 (1990), *allocatur denied,* 533 Pa. 629, 621 A.2d 576 (1992); *State Ethics Commission v. Landauer,* 91 Pa. Commw. 70, 496 A.2d 862 (1985).

Taking these elements in reverse order, it appears obvious that petitioners do face irreparable harm. Petitioners are currently unable to worship at the church they have been devoted to for years. For many of these

petitioners, spiritual connection with St. Elizabeth's has been an intricate part of their lives. It goes without saying, therefore, that the closure of St. Elizabeth's has created significant distress and anxiety. While there is some speculation whether or not petitioners may have some recourse within the Roman Catholic Church through canonical appeal or otherwise, it is clear that petitioners have no adequate remedy at law.

Petitioners cannot sustain the remaining requirements for the grant of an injunction, however, in that they have no right to relief. With reference to the court's earlier discussion pertaining to standing, the court restates that the petitioners do not own St. Elizabeth's Church. Instead, it is owned by the Pittsburgh Diocese of the Roman Catholic Church to be used in any manner which the church concludes will aid in its goal of salvation via the promotion of the Roman Catholic faith. Therefore, the church, as the legal owner of the property, was entitled to treat the property as it wished. Suppressing the parish of St. Elizabeth's was entirely within the church's legal authority. The only privileges the parishioners enjoyed in regard to the use of the church property were those actually extended to them by the Roman Catholic Church itself. See *St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority, supra* at 198, 146 A.2d at 726. These are matters for the church and the church has generally governed such matters through its canons.

As to the church canons, however, there can be no judicial intervention. Precedent cautions this court that it is not to involve itself in the interpretation or enforcement of canonical law unless the same is violative of the civil law of the land. See *St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority, supra* at 198, 146 A.2d at 726; *Canovaro v. Brothers*

*of the Order of Hermits of St. Augustine, supra* at 84 and 86, 191 A. at 145; *Post v. Dougherty, supra* at 101-102, 191 A. at 153.

Finally, the First Amendment to the United States Constitution prohibits the court from reviewing canonical law and the internal operation of the Roman Catholic Church. The legal principles encompassing this prohibition have been ably distilled in the case of *Presbytery of Beaver-Butler of the United Presbyterian Church v. Middlesex Presbyterian Church,* 507 Pa. 255, 489 A.2d 1317 (1985). There, the following language was relied upon:

"It is true that courts are proscribed from turning to an interpretation of ecclesiastical law in resolving title, and the right to possession of church property. In fact, *courts may not inquire into ecclesiastical questions.* (citation omitted) *However, courts are not proscribed from entertaining and resolving such disputes if such can be resolved by the appliation of 'neutral principles of law.' " Id.* at 265, 489 A.2d at 1322. (emphasis in original) (quoting *Western Pennsylvania Conference of United Methodist Church v. Everson Evangelical Church,* 454 Pa. 434, 312 A.2d 35 (1973)).

Instantly, petitioners are asking the court to do what it cannot do, *i.e.,* delve into an interpretation of canonical law, and attempt to force its interpretation onto a church. The court would consider this contrary to the First Amendment, and so will not engage in such an exercise. Despite this, the court will note, without specificity, that the evidence presented by petitioners in order to demonstrate violations of canonical law was rather dubious, and therefore, lacking in terms of petitioners' burden.

The court empathizes with petitioners. Their concern and loyalty are unquestioned. Nevertheless, despite the

assiduous and able efforts of their counsel, the law dictates that the court deny their petition. Petitioners lack standing, and beyond that, cannot succeed on the merits.

In a final expression of its sentiments in this matter, therefore, the court can do little to improve upon the words chosen by the great Justice Michael A. Musmanno in *St. Peter's, supra:*

"[T]he law applicable to the case is explicit and, as it now stands, can offer no alternative in the disposition of the legal issue involved.

"However, speaking for myself, I am confident that the loyalty manifested by the parishioners toward their church cannot go unnoticed and unrequited, and that in the broad expanse of their fealty and devotion, a church will rise to receive the expression of their faith and their love." *Id.* at 204, 146 A.2d at 729. (Musmanno, *J.,* concurring.)

## ORDER

And now, December 14, 1994, based on the foregoing opinion, plaintiffs' petition for preliminary and permanent injunctions is hereby denied.