668 A.2d 1151

The CROATIAN ROMAN CATHOLIC CONGREGATION OF the HOLY TRINITY CHURCH, AMBRIDGE, BEAVER COUNTY, PENNSYLVANIA, an Unincorporated Association, By and Through, Charles A. CVITKOVIC, Alfonso Vlasic, Paul Poulos, Mary Vucetich, Joseph B. Durbin, John J. Nelko, and Alan L. Evanish, Trustees ad Litem, Appellants,

v.

The Most Reverend Donald W. WUERL, Bishop of the Roman Catholic Diocese of Pittsburgh, Ernest D. Preate, Attorney General, and Nancy Sobolevitch, Court Administrator.

The CONGREGATION OF SAINT MARY'S ROMAN CATHOLIC CHURCH OF NEW CASTLE, LAWRENCE COUNTY, PENNSYLVANIA, an Unincorporated Association, By and Through, Dr. Joseph L. MORETTO, Paul A. Zarilla, Shirley O'Connor, Thomas C. Elliott, and Edwin G. Stevens, Trustees ad Litem, Appellants,

v.

The Most Reverend Donald W. WUERL, Bishop of the Roman Catholic Diocese of Pittsburgh, Court Administrator's Office of Pennsylvania, and The Attorney General of Pennsylvania.

The ROMAN CATHOLIC CONGREGATION OF the DIVINE REDEEMER OF AMBRIDGE, BEAVER COUNTY, PENNSYLVANIA, an Unincorporated Association, By and Through, Leo GRANDOVIC, Michele L. Warmbrodt, Milton Hertneky, Richard Halicek, and Anna Marie Dzubak, Trustees ad Litem, Appellants,

v.

The Most Reverend Donald W. WUERL, Bishop of the Roman Catholic Diocese of Pittsburgh, Nancy Sobolevitch, Court Administrator, and Ernest Preate, Attorney General.

Superior Court of Pennsylvania.

Argued Sept. 27, 1995.

Filed Dec. 18, 1995.

David K. McMullin, Pittsburgh, for appellants.

William A. Steidle, Jr., Pittsburgh & Phillip J. Murren, Harrisburg, for The Most Reverend Donald W. Wuerl, appellee.

Before ROWLEY, President Judge, and CAVANAUGH and CIRILLO, JJ.

ROWLEY, President Judge:

These consolidated appeals have been filed by three congregations of Roman Catholic churches whose parishes have been suppressed by appellee[1] The Most Reverend Donald W. Wuerl, Bishop of the Roman Catholic Diocese of Pittsburgh: at No. 122 Pittsburgh 1995—the Croatian Roman Catholic

---

1. Appellants named the Attorney General of Pennsylvania as a defendant due to their allegation of the unconstitutionality of a statute, 10 P.S. § 81, a question which the trial courts did not answer. It is not clear from the record why the Court Administrator of Pennsylvania was also named as a defendant, and, at oral argument, appellants' counsel was unable to provide any enlightenment in that regard. Neither the Attorney General nor the Court Administrator have filed briefs in this appeal.

Congregation of the Holy Trinity Church, Ambridge, Beaver County, Pennsylvania, an unincorporated association, by and through, Charles A. Cvitkovic, Alfonso Vlasic, Paul Poulos, Mary Vucetich, Joseph B. Durbin, John J. Nelko, and Alan L. Evanish, trustees ad litem; at No. 254 Pittsburgh 1995—the Congregation of Saint Mary's Roman Catholic Church of New Castle, Lawrence County, Pennsylvania, an unincorporated association, by and through, Dr. Joseph L. Moretto, Paul A. Zarilla, Shirley O'Connor, Thomas C. Elliott, and Edwin G. Stevens, trustees ad litem; and at No. 733 Pittsburgh 1995— the Roman Catholic Congregation of the Divine Redeemer of Ambridge, Beaver County, Pennsylvania, an unincorporated association, by and through, Leo Grandovic, Michele L. Warmbrodt, Milton Hertneky, Richard Halicek, and Anna Marie Dzubak, trustees ad litem.[2]

The cases involving the parishes of Holy Trinity and Divine Redeemer were decided by the Honorable Robert E. Kunselman of the Court of Common Pleas of Beaver County. In both cases, Judge Kunselman determined that the appellants in those cases did not have standing to maintain the actions because the parishes no longer existed in light of the Decrees of Suppression. Judge Kunselman therefore sustained appellee's preliminary objections and dismissed the complaints. The case involving the parish of St. Mary's was decided by the Honorable John Q. Stranahan, Specially Presiding, of the Court of Common Pleas of Lawrence County. Judge Stranahan, in granting appellee's motion for summary judgment, also found that the appellants in that case had no standing to maintain an action. Judge Kunselman and Judge Stranahan further determined that the decision of whether to suppress a parish is an ecclesiastical matter which is not reviewable by civil courts. We agree, and accordingly, we affirm the orders sustaining the preliminary objections and dismissing the com-

2. We adopt the statements of facts and procedure as set forth by the trial courts which decided these cases. *See* Opinion (Kunselman, J.), 12/14/94 (No. 122 Pittsburgh 1995); Opinion (Stranahan, J.), 1/10/95 (No. 254 Pittsburgh 1995); Opinion (Kunselman, J.), 3/27/95 (No. 733 Pittsburgh 1995).

plaints at Nos. 122 and 733 Pittsburgh 1995 and the order granting summary judgment at No. 254 Pittsburgh 1995.

Before discussing the merits of the issues presented by these cases, we, like Judge Stranahan, wish to acknowledge the obvious devotion that the parishioners of the suppressed parishes have for their churches. *See* Trial Court Opinion (Stranahan, J.) at 3. That devotion, however, can neither confer upon the civil courts jurisdiction over an ecclesiastical matter nor cloak appellants in these cases with standing where none exists. Furthermore, as stated by Judge Stranahan, "It is [ ] not this devotion which guides this Court. We are compelled to follow the law the Commonwealth has set forth by statutes as interpreted in the case law, and it is with this in mind that we turn to the issues presently before this Court." *Id.* at 4. We add that we must also act within the parameters set by the Establishment and the Free Exercise Clauses of the First Amendment of the United States Constitution and by Article I, Section 3 of the Pennsylvania Constitution.

Appellants first argue that the trial courts erred in determining that they do not have standing to pursue this matter. That question has already been decided by our Supreme Court in the companion cases of *Canovaro v. Brothers of the Order of Hermits of St. Augustine*, 326 Pa. 76, 191 A. 140 (1937) (dismemberment of a parish), and *Post v. Dougherty*, 326 Pa. 97, 191 A. 151 (1937) (suppression of a parish). In *Canovaro*, the Court held the following:

Under the church law the effect of dismemberment was to cause the parish to cease to exist and to transfer its members to adjoining parishes. There were no longer any members of the original parish. The order of dismemberment was binding on the parish members. Division, dismemberment, or suppression of parishes, and the effect thereof on membership are purely ecclesiastical matters, dependent upon the church law as administered by the appropriate authorities and tribunals. The effect of the dismemberment of the parish and the transfer of appellants' membership therefrom to other parishes was to deprive them of all rights as members in the church property of the

parish from which they were transferred. Church membership is an ecclesiastical matter, not temporal. There is no property right in membership, and there could be no property rights in lay members except through their membership in the congregation.

*Canovaro*, 326 Pa. at 84–85, 191 A. at 145 (citation omitted). Similarly, the Court in *Post* stated:

[A]ny rights which the laity may have in church property can arise only out of membership in the congregation. Also that membership in a congregation and the division, dismemberment, or suppression of parishes are purely ecclesiastical matters subject to the church rules and controlled by the decisions of the appropriate church tribunals in so far as they do not contravene the law of the land. The act of the Holy See in suppressing the Holy Family Parish was a proper exercise of the jurisdiction conferred by the canons upon the Holy See acting through the Sacred Congregation of the Council. The reasons for its suppression, their existence in fact and sufficiency to warrant the extinction of the parish are matters for the Holy See; it alone had final and exclusive jurisdiction, and its decision must be accepted as binding on this court. We do not review the merits of a decision rendered in an ecclesiastical matter by the appropriate church tribunal or official.

*Post*, 326 Pa. at 101–02, 191 A. at 153. The Supreme Court's decisions in *Canovaro* and *Post* preclude the exercise of jurisdiction over these cases.

Nonetheless, appellants argue that the above cases are not controlling because they claim to be proceeding as congregations rather than as parishes. They contend that a congregation can still exist after a parish is suppressed and that a congregation would have standing to bring an action to protect its alleged property rights. We disagree that there is a relevant distinction between a congregation and a parish so as to preclude application of the holdings in *Canovaro* and *Post* to these cases, especially considering that the Court in those cases used the term "congregation."

Additionally, appellants contend that *Canovaro* and *Post* are not controlling because an earlier version of the Code of Canon Law was in effect when those cases were decided. Appellants do not explain, however, why the present version of the Code of Canon Law would compel a different result in these cases, other than to reiterate their position that a parish and a congregation are separate entities. We have already discussed that contention.

Appellants also contend that the above cases are distinguishable because appellee violated numerous provisions of the Code of Canon Law. As stated by Judge Kunselman, however, appellee is the appropriate church official to make a decision in an ecclesiastical matter, and we cannot, under *Canovaro* and *Post,* interfere with that decision.

Appellants also contend that this Court is bound by a decision of the Apostolic Signatura, the highest tribunal of the Roman Catholic Church which, they assert, establishes a congregation's standing, after suppression of a parish, to challenge that suppression. We disagree, first, that this Court is bound by a decision of a church tribunal. Moreover, Canon 221, relied upon by appellants to support their argument that they have standing to proceed in civil court, states, in relevant part, "The Christian faithful can legitimately vindicate and defend the rights which they enjoy in the Church before a competent *ecclesiastical* court in accord with the norm of law." Canon 221, § 1 (emphasis added). Appellants' contention that the above provision confers standing upon them to proceed in civil court is unavailing in light of the clear language of that Canon.

For the above reasons, we affirm the trial courts' orders.

Orders affirmed.