ST. MATTHEW'S SLOVAK ROMAN CATHOLIC CONGREGATION, South Side Pittsburgh, Pennsylvania, an unincorporated association, by and through,; Eugene Selko; Clifford Moeller; Duane Hovanec, Trustees Ad Litem, Appellants,

v.

THE MOST REVEREND Donald W. WUERL, Bishop of the Roman Catholic Diocese of Pittsburgh,

Slovak Roman Catholic Congregation of Holy Trinity Church, Ford City, Armstrong County, Pennsylvania, an unincorporated association, by and through,; Paul Kovacik; Rose Marie Bloser; Arthur Valasek, Trustees Ad Litem, Appellants,

v.

THE Most Reverend Anthony G. Bosco, Bishop of the Roman Catholic Diocese of Greensburg.

No. 03–4042, 03–4041.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) May 14, 2004.

Decided June 17, 2004.

762

David K. McMullin, Pittsburgh, PA, for Appellants.

Philip J. Murren, Ball, Murren & Connell, Camp Hill, PA, Eric N. Anderson, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, for Appellees.

Before NYGAARD, MCKEE and CHERTOFF, Circuit Judges.

OPINION

CHERTOFF, Circuit Judge.

This is the consolidated appeal of two putative unincorporated Roman Catholic congregations ("Appellants") by and through various trustees ad litem. The Appellants seek to challenge the suppression of their former parishes by the Appellees—two Roman Catholic Bishops—as well as the disposition of the former parish property. The District Court, relying on a long line of remarkably similar cases in the state courts in Pennsylvania, held that the Appellants lacked standing. The District Court also held that the Appellants' federal constitutional claims must fail because the Appellees are not "state actors." The complaints were dismissed. We will affirm.

I.

On or about November 1, 1992, the Bishop of Pittsburgh, The Most Reverend Donald W. Wuerl, signed a decree suppressing the St. Matthew's parish and thereby dis-

solving its congregation.[1] On or about June 27, 2002, the Bishop of Greensburg, The Most Reverend Anthony G. Bosco, did the same with the personal (not territorial) parish of Holy Trinity.

The real property associated with each of these former parishes was held in trust by the Bishops (hereinafter "Appellees"), as it had been by their predecessor Bishops, for the benefit of the parishes' congregations. Accordingly, the Appellees, acting under state law, Act of June 20, 1935, P.L. 353, 10 Pa. Cons.Stat. § 81 ("the Act" or "the 1935 Act"),[2] took possession of and distributed the personal and real property previously held in trust for the two suppressed parishes.[3]

In actions filed in the District Court for the Western District of Pennsylvania on January 21, 2003 and May 13, 2003, the Appellants, former members of Holy Trinity Parish and St. Matthew's parish respectively, challenged both the parish suppres-

sions and the subsequent disposition of property. The Appellants purported to sue as congregations, unincorporated associations comprised of members of the suppressed parishes. In their actions, the Appellants asserted the rights of the former parishes and claimed that because the church property was held in trust for the parish congregations, any disposition of that property by the Appellees without the Appellants' permission violated their rights.

Both complaints asserted the same three claims, based on slightly different facts. The Appellants first asserted a cause of action under 42 U.S.C. § 1983, alleging that the Appellees were state actors within the meaning of that statute and had violated the Appellants' constitutional rights. In particular, the Appellants alleged that the suppression of the parishes and subsequent disposition of parish prop-

---

1. The Roman Catholic church uses two processes to maintain overall geographical equality in parish membership: "suppressing" parishes and "erecting" parishes. *See* 1983 Code c.515, § 2; *see also* James A. Coriden et al., *The Code of Canon Law: A Text and Commentary* 415–16 (1985). Suppression is the process of extinguishing an existing parish in order to merge its members with those of another parish, either preexisting or newly erected. Coriden, *supra*, at 415–16. There is no dispute that the Canon Law requires a rigorous review process and the satisfaction of a number of criteria before a parish can be suppressed. 1983 Code c.515, § 2.

2. In relevant part, the 1935 Act states:

   Whensoever any property, real or personal, has heretofore been or shall hereafter be bequeathed, devised, or conveyed to any ecclesiastical corporation, bishop, ecclesiastic, or other person, for the use of any church, congregation, or religious society, for or in trust for religious worship or sepulture, or for use by said church, congregation, or religious society, for a school, educational institution, convent, rectory, parsonage, hall, auditorium, or the mainte-

   nance of any of these, the same shall be taken and held subject to the control and disposition of such officers or authorities of such church, congregation, or religious society, having a controlling power according to the rules, regulations, usages, or corporate requirements of such church, congregation, or religious society, which control and disposition shall be exercised in accordance with and subject to the rules and regulations, usages, canons, discipline and requirements of the religious body, denomination or organization to which such church, congregation, or religious society shall belong, but nothing herein contained shall authorize the diversion of any property from the purposes, uses, and trusts to which it may have been heretofore lawfully dedicated, or to which it may hereafter, consistently herewith, be lawfully dedicated.... 
   10 Pa. Cons.Stat. § 81.

3. The complaints do not give an itemized list of the personal property allegedly at issue. They do, however, mention certain categories of property, including money, sacred vessels, books and records, works of art, and statues.

erty violated the Fourteenth Amendment by depriving the Appellants of their property rights without due process of law. The Appellants also alleged that the Appellees' actions violated the Constitution by preventing the Appellants' free exercise of religion, violating their guarantee of a republican form of government, and violating the Establishment Clause. The Appellants also asserted claims based on Pennsylvania law—under the Pennsylvania common law of Trusts and under the 1935 Act itself—and claims based on Canon Law. The Appellees immediately moved to dismiss the actions under Fed.R.Civ.P. 12(b)(6).

The District Court, relying on numerous cases in the Pennsylvania state courts involving substantially similar facts and many of the same claims, dismissed the Appellants' actions for lack of standing. Additionally, the District Court held that the Appellees were not state actors within the meaning of 42 U.S.C. § 1983 and that the Canon Law claims were non-justiciable. The Appellants appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291 as this is a timely consolidated appeal from two final orders of the District Court dismissing the actions. We exercise plenary review over the District Court's decision to grant the Appellees' motion to dismiss. *Alston v. Parker*, 363 F.3d 229, 232–33 (3d Cir.2004). Because the appeal reaches us after dismissal on motion, we accept all of the facts alleged in the complaints as true, and apply the same inferences and standards as did the District Court, including crediting the Appellants with any reasonable inferences that may be drawn from the complaints. *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 168 (3d Cir.2002). Further, the District Court's determination that the Appellants lack standing is a determination of

law over which we exercise plenary review. *See Miller v. Rite Aid Corp.*, 334 F.3d 335, 340 (3d Cir.2003); *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir.1997).

## II.

The District Court dismissed all of the Appellants' claims on standing grounds. We consider in turn the District Court's jurisdiction to entertain each of the Appellants' three claims—under Section 1983, under Pennsylvania state law, and under Canon Law. We must address this (and any other) jurisdictional issue at the threshold, before proceeding to consider the merits. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

### A.

The concept of standing lies at the heart of a federal court's jurisdiction. As a matter of our authority under Article III to resolve only justiciable "cases" and "controversies," federal courts can consider only claims brought by those with standing to sue on those claims. Standing has constitutional requirements: The plaintiff must (1) allege an "injury in fact;" (2) allege a sufficient causal relationship between that injury and the alleged conduct by the defendant; and (3) seek relief that will redress the injury alleged. *Id.* at 102–03, 118 S.Ct. 1003. These three elements constitute the "core of Article III's case-or-controversy requirement," and the party "invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103, 118 S.Ct. 1003.

Beyond these core essentials, the Supreme Court has adumbrated several additional standing principles, which are rooted in prudence, rather than strict constitutional command. Among these are the

principles that a plaintiff may not normally enforce the rights of a third party. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. ——, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004); *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A principal purpose of that requirement is the recognition that the third party may well wish that its rights not be asserted. *See Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 80, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

The District Court based its holding that the Appellants in this case lacked standing to bring their Section 1983 claims on a line of state court decisions denying parishioners standing to challenge parish suppressions. *See St. Peter's Roman Catholic Parish v. Urban Redev't Auth. Of Pittsburgh*, 394 Pa. 194, 146 A.2d 724, 726 (1958); *Canovaro v. Brothers of Order of Hermits of St. Augustine*, 326 Pa. 76, 191 A. 140, 144 (1937); *Post v. Dougherty*, 326 Pa. 97, 191 A. 151, 153 (1937); *Croatian Roman Catholic Congregation v. Wuerl*, 447 Pa.Super. 208, 668 A.2d 1151, 1153 (1995); *The Roman Catholic Congregation of St. Elizabeth Church v. Wuerl*, 22 D. & C.4th 391, 395 (1994). Strictly speaking, however, those cases analyzed standing as a matter of state law. The principal issue here—standing in federal court to pursue federal claims—is distinct. Consequently, we analyze the standing issue in this Court and in the District Court under federal standards.

■ In this case, the core requirements of Article III standing appear to be satisfied at least with respect to some of the Section 1983 claims. To the extent the Appellants assert that the parishes have been deprived of physical property to which they are entitled, they have alleged an injury in fact. To the extent that they claim that the Appellees have caused the transfer of the property, they have alleged causation. And some of the relief the Appellants seek on behalf of the parishes—e.g., the return of property—is redressable.

What is in doubt, however, is whether the Appellants are asserting their own rights, or the rights of third parties. This raises a prudential, rather than constitutional, standing question. *See Newdow*, 542 U.S. at ——, 124 S.Ct. 2301; *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 474, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The Appellants allege that the church properties at issue were deeded in trust to the congregations of the former parishes. The theory of their cases is that the parishes which define each congregation have been wrongfully dissolved, and that the church properties which were deeded in trust for the respective congregations of each parish were wrongly distributed by the Appellee trustees. The former parishioners have banded together as associations, and are suing in the name of the dissolved congregations to challenge the Appellees' decisions to suppress the parishes and distribute the parish property. Thus, the Appellants explicitly seek to assert property rights that they allege are beneficially owned by the dissolved congregations as entities.

But the Appellants' decision to style themselves as congregations injects an element of confusion into the proceedings. The fact that the Appellants have formed congregations does not mean that they are the congregations named as beneficiaries in the deeds.

■ State law determines who holds rights under the property deeds in question. And in defining the entities that are the beneficiaries of church property, Pennsylvania law draws no distinction between each parish's congregation and the parish itself. The state courts have treated the

terms "parish" and "congregation" interchangeably for purposes of resolving property disputes, *see Croatian Roman Catholic,* 668 A.2d at 1153. The 1935 Act, which vests control of religious property in the Bishop, actually uses the term "congregation" rather than parish. *See* 10 Pa. Cons. Stat. § 81.

A parish and its congregation, therefore, are two sides of the same coin. The suppression of one necessarily entails the dissolution of the other. That being so, the congregations listed on the deeds ceased to exist as property-owning entities when their parishes were suppressed. The Appellants essentially concede this, stating in their complaints that the Appellees "dissolved the congregation[s] by suppressing the parish[es]." J.A. at 25a (Compl. at ¶ 20).[4]

Because the entities that were the congregations named in the deeds no longer exist, the congregations listed as plaintiffs and Appellants in this lawsuit are simply unincorporated associations of former parish members. The Appellants, even if they constitute themselves as new congregations, do not hold the rights to the church property that the suppressed parishes and their defunct old congregations held. Indeed, the newly-constituted congregations hold no interest in the former parish property beyond whatever interest the individual parishioners might have held. Because rights in the former parish

property belong not to the Appellant congregations but to the defunct congregations, what Appellants are trying to do is assert the distinct rights of the suppressed congregations.

■ This raises the question whether plaintiffs have standing under Section 1983 to assert legal rights belonging to the original congregations. *See Newdow,* 542 U.S. at ——, 124 S.Ct. 2301; *Warth,* 422 U.S. at 499, 95 S.Ct. 2197. We need not address this novel issue, however, because we agree with the District Court that the Bishops are not state actors liable under Section 1983.[5]

"To state a claim under § 1983, a plaintiff ... must show that the alleged deprivation [of a constitutional right] was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). This requirement dovetails with the principle that constitutional violations must be predicated upon state action. *Id.* at 49, 108 S.Ct. 2250. If defendants' "conduct satisfies the state action requirement of the Due Process Clause, then it also qualifies as action 'under color of state law' for § 1983 purposes." *Abbott v. Latshaw,* 164 F.3d 141, 145 (3d Cir.1998).

The Bishops sued here are not alleged to be public employees. This does not end the matter, however, for it is possible for

---

4. We recognize that each of the consolidated appeals was separately briefed and that, as a consequence, each case has its own Joint Appendix. We note, however, that the contents of each of the separate Joint Appendices is roughly identical. For convenience, therefore, we cite exclusively to the Joint Appendix in 03–4041 using the convention "J.A. at __" with a parenthetical pinpoint citation to the document referenced.

5. The Supreme Court ruled in *Steel Co.* that federal courts must ordinarily resolve Article III standing questions before addressing the

merits of a case. 523 U.S. at 94, 118 S.Ct. 1003. Here, we have determined that Article III standing exists. What remains is a question of prudential standing. *See Newdow,* 542 U.S. at ——, 124 S.Ct. 2301; *Valley Forge,* 454 U.S. at 474, 102 S.Ct. 752. We do not read *Steel Co.* as requiring that prudential standing issues must always be resolved antecedent to the merits. *See Steel Co.,* 523 U.S. at 97 n. 2, 118 S.Ct. 1003; *see also Lerner v. Fleet Bank,* 318 F.3d 113, 126–28 (2d Cir. 2003).

private parties to be so cloaked with state power that they are treated as state actors. We have explained that this type of state action inquiry has two parts. First, we ask whether the alleged constitutional injury is the result of the exercise of a privilege " 'having its source' " in state authority. *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 801 (3d Cir.2001) (quoting *Edmonson v. Leesville Concrete,* 500 U.S. 614, 620, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)). Second, we determine whether the private party " 'could be described in all fairness' " as a state actor. *Id.* (quoting *Edmonson,* 500 U.S. at 620, 111 S.Ct. 2077.).

■ The District Court correctly concluded that the Appellees cannot be described as state actors. To the extent that their power to suppress the parishes and dispose of parish property flows from the operation of general state property law, they are no more state actors than any citizen who engages in transactions in property, either on his or her own behalf or as a trustee. And insofar as the 1935 Act mandates that the state will defer to the Bishops in their exercise of authority over church property, that also does not transform the Appellees into state actors. It merely reflects the constitutionally compelled prohibition against state meddling in religious affairs. *See Jones v. Wolf,* 443 U.S. 595, 602, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich,* 426 U.S. 696, 710, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 446, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 727, 20 L.Ed. 666 (1871)

*Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982),

which Appellants invoke in their effort to dress the Bishops in state clothing, is inapposite here. There, private parties made use of a prejudgment attachment law to have the sheriff attach certain property. In finding that the private parties could be treated fairly as state actors, the Supreme Court relied on the fact that they acted jointly with state officials in seizing the property. *Id.* at 941–42, 102 S.Ct. 2744. In this case, however, there was no "joint participation" between the Appellees and any state officials.

We cannot fairly treat Appellees—officials of the Roman Catholic Church—as state actors. Indeed, to do so would be to turn the Establishment Clause on its head. The District Court properly determined that the claims under Section 1983 should be dismissed.

## B.

■ Pennsylvania case law forecloses the Appellants' state law claims. Federal adjudication of the Appellants' claims based on the Pennsylvania common law of trusts and on the 1935 Act are, of course, governed by state law. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As we have explained, the Pennsylvania courts do not recognize the right of an unincorporated association of former parishioners to sue under Pennsylvania law on behalf of their suppressed parish. *See St. Peter's,* 146 A.2d at 726; *Canovaro,* 191 A. at 144; *Post,* 191 A. at 153; *Croatian Roman Catholic,* 668 A.2d at 1154; *St. Elizabeth Church,* 22 D. & C.4th at 396. If the Appellants would be powerless to bring their suit under Pennsylvania law in the Pennsylvania courts, they must also be powerless to bring those claims in federal court. Any other rule would afford the Appellants more rights in federal court under Pennsylvania law than they would have in the Pennsylvania

768

courts. *See Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The Appellants' state law claims must be dismissed.

C.

■ The Appellants' final claims are brought under Canon Law. These claims are nonjusticiable. It is not the province of the federal courts to interpret and apply Canon Law. *Wolf,* 443 U.S. at 602, 99 S.Ct. 3020; *Milivojevich,* 426 U.S. at 710, 96 S.Ct. 2372; *Presbyterian Church,* 393 U.S. at 446, 89 S.Ct. 601; *Watson,* 80 U.S. (13 Wall.) at 727. Doing so would be in violation of the very Establishment Clause that the Appellants, in their Section 1983 claims, seek to invoke. *Milivojevich,* 426 U.S. at 709, 96 S.Ct. 2372. The Appellants' Canon Law claims must be dismissed as nonjusticiable.

III.

For the foregoing reasons, the order of the District Court will be affirmed.